Neil TEMPLETON et al., Plaintiffs,

v.

DIXIE COLOR PRINTING CO., Inc.,
et al., Defendants,
and
National Labor Relations Board,
Intervenor.

Civ. A. No. 68–115.

United States District Court,
N. D. Alabama, S. D.

April 20, 1970.

C. A. Powell, III, Robert McDavid Smith, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for plaintiff.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Michael Sohn, Joseph A. Yablonski, Attys., N.L.R.B., Washington, D. C., for intervenor.

George B. Smith, Constangy & Powell, Atlanta, Ga., for Dixie Color Printing Co.

J. Leon Adair, Adair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., for Union and Donald McFee.

## MEMORANDUM OPINION

ALLGOOD, District Judge.

The events leading up to the filing of this action began in November of 1964 when the defendant International Typographical Union (ITU) claimed to represent a majority of the 38 persons employed by defendant Dixie Color Printing Company, Inc., (Dixie). Dixie declined to recognize ITU whereupon ITU instituted a strike against Dixie. While 26 of Dixie's 38 employees participated, the strike failed to halt production. In fact, Dixie continued to hire new employees as well as replacement workers. When the strike ended, in 1967, all but one striking employee returned to work. By the time this suit was filed, Dixie had 73 employees, only 19 of whom were former strikers.

During the strike, unfair labor practice charges were filed with the National Labor Relations Board (Board) by the ITU against Dixie. On February 14, 1966, the Board ordered Dixie to bargain with the ITU and also to reinstate certain strikers.[1]

On January 10, 1967, the Court of Appeals for the District of Columbia issued a decree enforcing the Board's order.[2] Negotiations began in January, 1967, but no final agreement has ever been reached. In May of 1967, ITU petitioned the Board to institute contempt proceedings and in July of that year filed additional unfair labor practice charges against Dixie. On August 27, 1968, some six months after commencement of this action, the Board initiated contempt proceedings in the Court of Appeals for the District of Columbia. While a special master was appointed on January 13, 1969, there has been no hearing, and the contempt proceedings remain unresolved. Still more unfair labor charges were filed by ITU against Dixie in April, 1968. Thus far, neither these charges nor those filed in May of 1967 have been acted on by the Board.

On January 9, 1968, the plaintiffs, employees of Dixie who do not belong to the ITU, filed a petition for decertification with the Regional Director of the Tenth Region.[3] The petition was filed pursuant to Sections 102.60(a) and 102.61(c) of the Rules and Regulations of the Board and was supported by the signatures of 51 of the 73 employees of Dixie. The petition was dismissed by the Board's Regional Director on January 16, 1968.[4] Pursuant to Section 102.-72 of the Rules and Regulations of the Board, plaintiffs requested that the Board transfer their petition and consolidate it with the other matters involving Dixie which were then pending. This petition was denied also.[5]

On February 28, 1968, pursuant to Section 102.71 of the Board's regulations, the plaintiffs filed with the Board a Request for Review of the Regional Director's dismissal of their decertification petition.[6] The record shows that the request for review is being "held in abeyance" by the Board on the basis of what it refers to as the "blocking charge" rule. This will be discussed in detail below.

This class action was commenced February 28, 1968, against Dixie, ITU, and Donald McFee, international representative of ITU. Plaintiffs, alleging that they represented a majority of the employees of Dixie,[7] prayed for an

---

1. Dixie Color Printing Company, Inc., 156 N.L.R.B. No. 120 (1966).

2. International Typographical Union, et al. v. National Labor Relations Board, 371 F.2d 347 (D.C. Cir. 1966).

3. Plaintiffs' Exhibit "B".

4. Plaintiffs' Exhibit "C".

5. Plaintiffs' Exhibit "D".

6. Plaintiffs' Exhibit "E".

7. Indeed, it is conceded by all parties that the ITU does not represent a majority of the Dixie employees. At the oral hearing

injunction prohibiting the defendants from negotiating, bargaining and entering into a collective bargaining agreement, on the ground that they would be injured by representation by a minority union. The Board filed a petition to intervene as a party defendant on March 11, 1968, which was opposed by the plaintiffs. This court, after consideration of written briefs from all parties and an oral hearing, allowed the Board to intervene but found that the complaint as then framed against the original defendants did not state a claim over which the court had jurisdiction. Plaintiffs were granted leave to amend.

Plaintiffs' amended complaint alleges that they will be irreparably injured by any efforts of ITU or Dixie to enter into collective bargaining in view of the ITU's minority status. The primary thrust of the amended complaint is the charge that the Board's failure to act is violative of both the National Labor Relations Act and the Administrative Procedure Act and has caused them irreparable harm in depriving them of their statutory rights.

The Board interposed a Motion to Dismiss and a Motion for Summary Judgment which was adopted by ITU. The Board attached as Appendices A and B to its motion for summary judgment two letters which clarify the Board's position by clearly stating the basis of its refusal to process the plaintiffs' decertification petition. Appendix B sets forth a section from the Board's "Field Manual" which states:

"*11730 Concurrent R and C cases in general:* The Agency has a general policy of not proceeding in any representation case (RM, RC, or RD) or union deauthorization case (UD) where charges of unfair labor practices affecting some or all of the same employees are concurrently pending and where the charging party is a party to the R or UD case. The R case will be processed as if there were no current C case if the charging party is a person who is not a party to the R case, *unless* the charge alleges violations of 8(a) (2), 8(a) (5), 8(b) (3), or 8(b) (7).

"If the charge is already pending at the time of the filing of the petition, the investigation of the latter will normally be postponed; if the charge is filed after investigation on the R or UD case has already begun, action on the petition will normally be suspended, except for dismissal or withdrawal then indicated.

"The pendency of a charge, as used here, includes all stages in the life of a charge up to and including a dismissal, on the one hand; or, on the other, up to and including a court decree with which there has not been full compliance."

Thus the Board's only reason for not acting is the above cited provision from its "Field Manual," sometimes referred to as the "blocking charge" rule. Subsequently, the Board provided the court with a copy of the "Petition for Adjudication in Civil Contempt and for other Civil Relief" filed by it in the Court of Appeals for the District of Columbia. (Bds. Exhibit D). The contempt petition does not involve any charge that the employer "refused to bargain" but deals solely with whether or not Dixie fully complied with the enforced Board order that it reinstate certain of the former strikers.

All of the parties have stipulated that the court may decide the merits of this matter on the basis of the oral hearing of March 11, 1968, the pleadings and exhibits thereto and the excellent and extensive briefs of the parties.

The court is not unmindful of the exceedingly complex nature of the prob-

on March 11, 1968, when counsel for the Board stated that an election might ultimately be held, counsel for the ITU stated: "No it won't; the union would withdraw * * *. The facts are the

facts as stated by [plaintiffs]; there would be no occasion for an election; * * *.", to which counsel for the Board replied, "O.K. That's fine." Transcript of oral hearing, p. 39.

lem presented by this case, requiring as it does a balancing of the diverse interests of a union, an employer, the National Labor Relations Board and a group of employees representing 70% of the 1968 work force of Dixie. In addition, it has been contended that the case peripherally touches upon a matter pending before the Court of Appeals for the District of Columbia. Nonetheless, the court would be derelict if it chose to leave this matter any longer in what the defendants may regard as the comfortable limbo of judicial and Board inaction.

Initially the court notes that these employees' rights have been involved in litigation before the N.L.R.B. and the courts since 1964. At no time have Dixie's employees been afforded an opportunity to indicate their desires through a secret ballot election. The size and composition of the union has obviously undergone a significant change in that period. There is no indication that the litigation arising from the initial Board proceedings against the employer will be concluded at any time in the foreseeable future. Moreover, the Board has not acted upon the additional unfair labor practice charges asserted against the employer, some of which were filed in July, 1967, and all of which have been pending for more than two years. Yet it is these same unproven charges that the Board relies upon for invocation of the so-called "blocking charge" rule. If the contention of the Board was followed, these plaintiffs could well be retired before their petition is entertained and their statutory rights recognized.

The court is of the opinion that the decision and order entered here will in no way affect the Board's ability to secure enforcement of the order of the Court of Appeals for the District of Columbia. The contempt proceeding growing out of that order, involving as it does matters which occurred several years ago, will not turn on the outcome of these plaintiffs exercising their statutory rights to an election but will instead depend on whether or not Dixie followed the Court of Appeals' order in reinstating former strikers. That court may impose appropriate sanctions as may be required for any contumacious conduct notwithstanding a change in the union's status as bargaining representative, if in fact there is a change.

■ The court is of the firm opinion that the National Labor Relations Act [8] —is designed to guarantee to employees certain rights, including the right to refrain from being represented by a labor union if that be their free choice. To this end, Congress has prohibited certain types of conduct by both unions and employers.

To administer this Act, Congress envisioned an impartial administrative agency charged with protecting the employee rights set forth in Section 7, 29 U.S.C. § 157. It is those employee rights which must be of primary concern not only to the Board but to this court as well. Unfortunately, the Board has, in this case, totally ignored those rights through a deliberate and apparently interminable program of inaction. Here, the Board has, for more than two years, refused to conduct an election on a concededly valid petition which meets all of the applicable statutory and regulatory criteria for the sole and exclusive reason that there are unproven allegations pending against the plaintiffs' employer. At no time in the pendency of this case has the Board advanced any other reason for not conducting an election and indeed has conceded that there is no other reason.

■ The plaintiffs have petitioned this court for relief while the intervenor and the union have argued that this court is without jurisdiction to grant appropriate relief. For the reasons set forth below the court finds that it does have jurisdiction to entertain this action and to order appropriate relief.

---

8. 20 U.S.C. § 151 et seq.

## JURISDICTION

Section 9(c) (1) of the National Labor Relations Act, 29 U.S.C. § 159(c) (1), provides:

"Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees * * * assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in subsection (a) of this section * * * the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof."

Although the employees' rights and the Board's duty are clear, the intervenor has maintained throughout these proceedings that this court lacks jurisdiction to compel it to take action in compliance with that express statutory command, asserting that the National Labor Relations Act, which provides petitioners with no means of redressing this continuing wrong, has deprived the district courts of any power to compel it to act or to correct its inaction. Even if there was not a substantial body of precedent contrary to the Board's position, its argument would have little appeal.

The Supreme Court recognized in A.F. of L. v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940) that while Board determinations in representation matters are generally unreviewable until presented in the context of an unfair labor practice case under Section 10(e) and (f), 29 U.S.C. § 160(e) (f), there might be situations where district courts would have jurisdiction in cases such as this, saying:

"In analyzing the provisions of the statute * * * we attribute little importance to the fact that the [representation proceeding] does not itself command action. *Administrative determinations which are not commands may for all practical purposes determine rights as effectively as the judgment of a court * * *

"The Board argues that the provisions of the * * * Act particularly § 9(d), have foreclosed review of its challenged action by independent suit in the district court * * * But that question is not presented for decision * * * Its answer involves a determination whether the * * * Act, insofar as it has given legally enforceable rights, has deprived the district courts of some portion of their original jurisdiction conferred by § 24 of the Judicial Code * * * It can be appropriately answered *only upon a showing in such a suit that unlawful action of the Board had inflicted an injury on the petitioners* for which the law, apart from the review provisions of the * * * Act, affords a remedy. [Emphasis supplied.] 308 U.S. 401, 408, 412, 60 S.Ct. 303, 305.

In 1958, the Supreme Court was presented with the situation anticipated in A.F. of L. v. N.L.R.B., *supra*. In Leedom v. Kyne, 358 U.S. 184, 191, 79 S.Ct. 180, 185, 3 L.Ed.2d 210 (1958), the court held that the district court had jurisdiction and observed that it is only logical that "where, as here, Congress has given a 'right' * * * it must be held that it intended that right to be enforced, and 'the courts * * * encounter no difficulty in fulfilling its purpose.'" There, the N.L.R.B. conceded that the district court had jurisdiction

to set aside unlawful Board action unless the Labor Act had withdrawn that traditional power. *Leedom* dealt with the Board's illegal action of including both professional and non-professional employees in the same bargaining unit without a separate election for the professionals. The court's discussion of its jurisdiction there is equally applicable to this court's jurisdiction to remedy the Board's wrongful refusal here to process a decertification petition filed by approximately 70% of the employees:

"Here, * * * 'absence of jurisdiction of the federal courts' would mean 'a sacrifice or obliteration of a right which Congress' has given professional employees, for there is no other means, within their control * * to protect and enforce that right. And 'the inference [is] strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control.' This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." [Citations omitted.] [358 U.S. at 190, 79 S.Ct. at 185].

In the past, as in this case, the Board has attempted to narrow the scope of Leedom v. Kyne, *supra*, by contending that it applies only in instances where the Board has violated a negatively worded prohibition and not where, as here, it has refused to comply with a mandatory requirement of the Act. However, as the Court of Appeals for the District of Columbia pointed out in Miami Newspaper Printing Pressmen's U. Local 46 v. McCullough, 116 U.S.App.D.C. 243, 322 F.2d 993, (1963), (a case involving the Board's refusal to certify an election as required by Section 9(c) (1)), it would be absurd to have the court's jurisdiction turn on whether a negative or affirmative provision had been violated:

"We are unable to read the Court's decision in Leedom v. Kyne as limit-

ed to the negatively worded prohibition there involved. If, after the Board finds that a question of representation exists, and an election is held, the requirement that it 'shall' certify the results is mandatory, then a failure to so certify would be prohibited by the Act and in excess of the Board's powers. A party would be as aggrieved by such a failure as by an act of the Board contrary to an express prohibition."
322 F.2d at 997].

■ Thus it is now clear that the jurisdiction of this court is not to be determined by whether the Board action complained of involves a prohibition or an affirmative command of the Labor Act.

In holding that the district court in *Leedom* did have jurisdiction to correct illegal Board action, the Supreme Court set forth the jurisdictional criteria by which this court is bound:

"Has there been unlawful Board action that 'has inflicted an injury on the plaintiff for which the law, apart from the review provision of the [Labor Act], affords a remedy?'"
[358 U.S. at 188].

For the reasons set forth below, the court finds that the facts of this case do present a situation falling within the ambit of that jurisdictional test.

## AVAILABILITY OF STATUTORY REMEDY

The only judicial review provisions of the Labor Act are those of Section 10 [9] providing for Court of Appeals review of Board action in unfair labor practice proceedings. Those provisions are not available for review of representation matters such as this.[10] While these provisions make available a vehicle by which employers and unions may ultimately obtain collateral judicial review of representation decisions by deliberately committing an unfair labor prac-

9. 29 U.S.C.A. § 160(e) and (f).

10. A.F. of L. v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940).

tice,[11] this circuitous method of review is obviously *not* open to these plaintiffs. Furthermore, there is no way their employer may litigate for them concerning their rights to a decertification election. See, e. g., N.L.R.B. v. Taormina, 207 F.2d 251 (5th Cir. 1953).

The plaintiffs have invoked, without avail, all of the administrative review procedures available to them. There is nothing further that they can do under the National Labor Relations Act or the Board's own rules and regulations.

■ The adequacy of statutory and administrative review must be judged in the context of the rights sought to be protected.[12] These plaintiffs complain not only of violations of the Board's duty under the Labor Act but of a disregard of the requirements of the Administrative Procedure Act as well. The Labor Act does not afford them a method of securing judicial review of the alleged violations of either statute. Consequently, if this court is without jurisdiction, there is no way by which these plaintiffs may vindicate their rights. As stated by Mr. Justice Jackson in *Leedom, supra:*

> "This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." [358 U.S. 190, 79 S. Ct. 185].

### UNLAWFUL BOARD CONDUCT

There can be no doubt that the Board's continuing refusal to honor the plaintiffs' decertification petition is unlawful or that the plaintiffs have been injured by that conduct. Congress has granted employees the right to petition for and have decertification elections. The Board has never contended in this case that the plaintiffs' petition fails to comply with its regulations or that the

statutory prerequisite of a "question of representation affecting commerce" does not exist. Indeed, in view of the Board's original determination in 1964 of the requisite affect on interstate commerce and the appropriateness of the bargaining unit, it could not now, under its own decisions, fail to find that an election "shall be held." Instead, the Board has relied exclusively on the pendency of proceedings against Dixie as its justification for denying these plaintiffs their statutory right. This position of the Board is a manifestation of its "blocking charge" practice.

The Board has established (albeit without following the provisions of the Administrative Procedure Act), a practice whereby it will refuse to process a petition for an election in the face of unresolved charges of unfair labor practices. As noted by the Seventh Circuit; "This practice is not based upon statute or even a regulation * * *," Pacemaker Corp. v. N.L.R.B., 260 F.2d 880, 882 (7th Cir. 1958). Instead, the practice is described in § 11730, et seq., of the "National Labor Relations Board Field Manual," previously mentioned. The Board has prefaced this Field Manual with the following statement:

> "The instructions in this manual have been issued by the General Counsel of the * * * Board pursuant to his authority under Section 3(d) of the Act, and the powers delegated to him by the Board. Its purpose is to establish procedural and operational instructions for the guidance of the agency staff in administering the * * * Act. *The instructions are not Board rulings or directives and are not a form of authority binding upon the Board.* [Emphasis supplied].

Thus the reason advanced by the Board in justification of its conduct in this case is predicated not on the Act, nor on any regularly adopted regulation but

11. See, e. g., Boire v. Miami Herald Publishing Co., 343 F.2d 17 (5th Cir. 1965); Miami Newspaper Printing Pressmen's Local 46 v. McCullough, 116 U.S.App. D.C. 243, 322 F.2d 933 (1963) (particu-

larly fn. 7); Local 130, I.U.E. v. McCullough, 120 U.S.App.D.C. 196, 345 F.2d 90 (1965).

12. Deering Milliken v. Johnston, 295 F.2d 856, 864 (4th Cir. 1961).

on an "instruction" which is "not a Board ruling[s] or directive[s]" and is not even "a form of authority binding upon the Board."[13] Consequently, the sole basis advanced for the denial of these plaintiffs' Congressionally granted rights is a mere "instruction" which the Board itself recognizes as having no legal significance.

The Board was granted rule-making authority in Section 6 of the National Labor Relations Act.[14] It has been repeatedly criticized for refusing to utilize the orderly procedures created by Congress for the promulgation of regulations.[15] The Supreme Court has recently had occasion to consider in detail the applicability of the Administrative Procedure Act, 5 U.S.C. § 551 et seq., to Board "rules." In N.L.R.B. v. Wyman-Gordon Co., 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969), the Court, while approving the order that the employer in that case produce an "Excelsior list" did so on the basis that in that case an adjudicatory hearing had resulted in the order, but specifically found the "Excelsior Rule," as such, to have been invalidly promulgated. Justice Fortas, speaking for the majority, noted that:

"The rule-making provisions of that Act [the APA], which the Board would avoid, were designed to assure fairness and mature consideration of rules of general application. [Authorities omitted] * * *

"There is no warrant in law for the Board to replace the statutory scheme with a rule-making procedure of its own invention." [Ibid at 764, 89 S.Ct. at 1429].

This court finds "no warrant in law" for the Board's utilization of an internally generated rule or "instruction" to deprive these plaintiffs of their statutory rights.

There have been relatively few circuit court decisions dealing with the "blocking charge" practice and, so far as this court can determine, none of them have squarely dealt with the problem now before this court. However, in those few cases in which the practice has been discussed, the courts have been clear in their criticism.

In N.L.R.B. v. Minute Maid Corp., 283 F.2d 705 (5th Cir. 1960), Judge Jones, (without considering the Administrative Procedure Act), characterized the Board's "blocking charge" practice and its refusal to process an employee decertification petition as "the Board's wrongful refusal to act * * *" and stated:

"Nor is the Board relieved of its duty to consider and act upon an application for decertification for the sole reason that an unproved charge of an unfair labor practice has been made against the employer." [283 F.2d 710].

The Fifth Circuit's criticism of Board's practice was approved in N.L.R.B. v. Gebhardt-Vogel Tanning Co., 389 F.2d 71, at 75, (1968), by the Seventh Circuit, which had voiced its own objections to this "blocking charge" rule in Pacemaker Corporation v. N.L.R.B., 260 F.2d 880 (1958).

On the facts of this case the court is not called upon to express an opinion as to the desirability of the Board's prac-

13. "National Labor Relations Board Field Manual."

14. "The Board shall have authority from time to time to make, amend, and rescind, in the manner prescribed by the Administrative Procedure Act, such rules and regulations as may be necessary to carry out the provisions of this subchapter." 29 U.S.C. § 156.

15. See, e. g., Wyman-Gordon v. N.L.R.B., 397 F.2d 394 (1st Cir. 1968) where

Judge Aldrich stated: "Although the first time in this circuit, this is neither the first nor the most severe instance of Board action approximating contravention of the APA * * *. It has been long and severely criticized, e. g., Peck, The Atrophied Rule-Making Powers of the National Labor Relations Board, 70 Yale L.J. 729 (1961); Davis, Administrative Law § 6.13 (Supp.1967), with no apparent affect." Ibid. at 397.

tice in cases where an employer's petition is blocked by charges against that employer. Here, the issue, is whether under the facts of this case, including the Board's persistent failure to act, an employee's petition may be perpetually blocked by unproven charges against the employer. The court finds that the practice as applied by the Board in this case is unsupportable in the National Labor Relations Act.

The holding of the Supreme Court in *Wyman-Gordon, supra,* and the Fifth Circuit's explicit statement in *Minute Maid, supra,* clearly require the conclusion that on the facts of this case the Board is wholly without justification in its actions.

■ The primary purpose of the Labor Act is to protect *employee* rights. To deny to employees the right to determine whether or not they will be represented is tantamount to a repeal of § 7 and § 9(c) (1) (A) (ii) of the Act. Thus the Board is clearly refusing to carry out the Congressional mandate. It goes almost without saying that such a deprivation of a statutory right is a wrong to these plaintiffs which constitutes an injury of which this court may and does take notice. The Board's conduct in this case is no less a violation of its duties under the National Labor Relations Act than that complained of in Leedom v. Kyne, *supra,* and Miami Newspaper Printing Pressmen's U. Local 46 v. McCullough, *supra.*

### BOARD DELAY

The plaintiffs' decertification petition and request for review have been pending before the Board for more than two years. There is no indication that any relief will be forthcoming from that agency in the foreseeable future. All other grounds aside, this extraordinary delay compels the relief requested. By failing to act, the Board has effectively repealed, for these plaintiffs, Congressionally created rights.

There is nothing very unusual about a district court taking jurisdiction to compel agency action which has been wrongfully withheld or unreasonably delayed to the detriment of a statutory right. Section 10 of the Administrative Procedure Act, 5 U.S.C. § 706, expressly provides that the district court shall "compel agency action unlawfully withheld or unreasonably delayed." Long before that Act was passed, however, it was generally recognized that agency action could be compelled by Federal courts through the exercise of their inherent equity powers. Thus, in Interstate Commerce Commission v. United States ex rel. Humboldt Steamship Co., 224 U.S. 474, 485, 32 S.Ct. 556, 559, 56 L.Ed. 849 (1912), the Commission which had "refused to proceed at all, though the law required it to do so," was ordered to take jurisdiction of, and decide, a case involving transportation rates in Alaska. See also Addison v. Holly Hill Fruit Products, 322 U.S. 607, 619, 622–623, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944), directing the district court to hold a case until the Administrator of the Fair Labor Standards Act made a determination of an area of production "with all deliberate speed" noting that the court could "require him to exercise [his discretion] as a remedy against inaction;" Safeway Stores v. Brown, 138 F.2d 278, 280 (E.C.A.1943), observing that mandamus was available in the event of delay to direct "the Price Administrator to take action upon a pending protest;" and the innumerable cases cited by Judge Haynesworth in his comprehensive opinion of Deering Milliken, Inc. v. Johnston, 295 F.2d 856, 861–862 (4th Cir. 1961).

In 1946, the practice under the general equity power was given express Congressional approval with the passage of the Administrative Procedure Act. Despite the Board's continuing reluctance to recognize the fact, cf. N.L.R.B. v. Wyman-Gordon Co., *supra,* this legislation is applicable to it just as it is to other Federal agencies, and this court has "the right and the duty to enforce the Act's requirement that the Board proceed with reasonable expedition." Deering Milliken, Inc. v. Johnston, 295

F.2d 856, 863–864. The Board has had a more than adequate period of time in which to dispose of the outstanding unfair labor practice charges against the company and to process the decertification petition filed by the employees, but has demonstrated no inclination to do so. Plaintiffs' right to an election is clear. As Judge Haynesworth pointed out in *Deering Milliken*, the legislative history reveals that agency action within a reasonable time is an enforceable "legal requirement," and not merely a precatory directive. The Act, in the words of the House Committee Report, was intended to guarantee that no agency:

"shall in effect deny relief or fail to conclude a case by mere inaction, or proceed in a dilatory fashion to the injury of the person concerned. No agency should permit any person to suffer injurious consequences upon unwarranted official delay." [Id. at 863].

No point would be served by prolonging this opinion with a list of decisions recognizing the district court's power pursuant to Section 10 of the Administrative Procedure Act to compel agency action in order to prevent injury resulting from unwarranted denial of a legal right or unreasonable delay in acting to effect it. Suffice it to say that section has been recognized as conferring such power in decisions of the Supreme Court, N.L.R.B. v. Rutter-Rex Mfg. Co., 396 U.S. 258, 90 S.Ct. 417, 421, 24 L.Ed.2d 405, 412 (1969); [16] The Fifth Circuit Court of Appeals, Nabors v. N. L. R. B., 323 F.2d 686, 689 (5th Cir. 1963); Atlantic & Gulf Stevedores, Inc. v. Donovan, 274 F.2d 794, (5th Cir. 1960); and the District Court of the Northern District of Alabama, Arrow Transportation Co. v. United States, 176 F.Supp. 411, 421 (N.D.Ala.1959). In Atlantic & Gulf Stevedores, Inc. v. Donovan, *supra*, Judge Brown stated:

"The APA provides categorically that 'every agency shall proceed with reasonable dispatch to conclude any matter presented to it * * *.' Apparently in recognition that a failure or refusal to hear and decide could be as destructive as bad deciding, Congress provided in § 10(e) that Courts may review the inaction of an agency and specifically 'compel agency action unlawfully withheld or unreasonably delayed.' And enforcement may be a mandatory injunction."

This court is empowered by the Administrative Procedure Act, 5 U.S.C. § 706(1), to compel agency action which has been either "unlawfully withheld or unreasonably delayed," and finds that the present record presents abundant evidence warranting relief on both those grounds. The only issue remaining to be decided, then, concerns the form of relief which should be granted.

The court is of the opinion that the appropriate relief in this matter can only be effectuated by the Board promptly conducting a decertification election. There appears to be no reason for the Board to hold a hearing on this matter inasmuch as in initially assuming jurisdiction of the employer it, of necessity, determined the requisite effect on interstate commerce and it specifically determined the appropriate bargaining unit. In addition, the Board has consistently maintained that the sole reason for its protracted failure to conduct an election is its practice relating to the employer's alleged misconduct, and, as the court has pointed out above, that furnishes it with no valid justification for refusing to act on the plaintiffs' petition. Therefore, judgment and decree in accordance with this opinion will be entered.

16. In *Rutter-Rex*, supra, where he Fifth Circuit sought to remedy inexcusable delay of the N.L.R.B. by limiting a backpay award, the Supreme Court noted that a party injured by delay (there the employer), may move under the APA to compel speedier action. [396 U.S. 228, 90 S.Ct. 417, 24 L.Ed.2d 405, 412].