**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TRANSPORT CLEARINGS, INC., Respondent.**

No. 19423.

United States Court of Appeals Fifth Circuit.

Dec. 27, 1962.

Rehearing Denied Jan. 21, 1963.

Stuart Rothman, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Peter M. Giesey, Melvin Pollack, Attys., N.L.R.B., Washington, D. C., for petitioner.

George E. Seay, Malone, Seay & Gwinn, Dallas, Tex., for respondent.

Before BROWN and BELL, Circuit Judges and SIMPSON, District Judge.

BELL, Circuit Judge.

The Labor Board seeks enforcement of an order[1] finding that the employer violated § 8(a) (3) and (1) of the Act by discharging two employees because of union activity and § 8(a) (1) of the Act by interrogating employees concerning union activity and by threatening them with economic reprisal for union activity. 29 U.S.C.A. § 158(a) (1) and (3).[2]

Respondent was engaged in the business of purchasing and collecting freight bills of motor carriers. At the time in question, October 1960, some twenty eight clerical employees were employed by Respondent and these were supervised by a general manager and an office manager. The evidence on which the Board could have relied was that Brewer, one of the employees whose discharge is here involved, spoke to an union organizer and arranged for a meeting of interested employees off premises on Friday, October 14. Lindsey, the other employee discharged, attended the meeting along with Brewer and several other employees. Lindsey was contacted prior to the union meeting but during the same day by the office manager regarding union activity. Lindsey advised him that he and Brewer were equally guilty in organizing for the union. The office manager, in response to an inquiry from Lindsey, stated that he did not think the general manager would fire anyone because of union activity.

Lindsey was summoned to the office of the general manager and summarily discharged, effective immediately, on Monday, October 17 on the ground that his work had not been satisfactory. He was told that a more experienced collector was being employed in his place. This proved not to be the fact as the replacement employee had no previous experience and he was not interviewed until two days after the discharge. Lindsey had been hired on July 12 during the same year and had received a regular pay raise in mid-September. He had been complimented by the office manager on his September work. There was evidence showing that he had decreased the delinquency rate on the accounts assigned to him from August to September. He had a run in with the general manager during September concerning a matter unrelated to the discharge which resulted in the general manager apologizing to him and refusing to let him resign. On the other hand, there was evidence that Lindsey was doing poor work, had been previously warned, was discharged purely for this reason, and that the general manager who discharged him did not

---

1. Reported at 133 NLRB No. 82.

2. Both the examiner and the Board found that a third employee had not been discriminatorily discharged.

know of his union activity. The office manager who did know of his union activity was present at the time he was discharged but testified that his union activity had nothing to do with his being discharged. The Board ascribed the knowledge of the office manager of his union activity to the general manager.

There was testimony that on the same day the general manager asked another employee whether he had been to the union meeting and whether two other named employees had attended the meeting. The employee admitted that he had been there and signed an union card but did not identify any other employees who attended the meeting. The office manager later told this employee that the employer might close if the employees went union. The office manager told another employee that there would be twenty-odd women walking the streets looking for jobs if the union came in because the doors would be closed tight, and to another he said, "If that union comes in, these doors will be closed; there will be a lot of you girls looking for a job."

The replacement for Lindsey was hired on Wednesday, October 19 and reported to the general manager that Brewer confronted him during his first two days of work in an effort to get him to join an union. The general manager then instructed the office manager to have Brewer stop his union activity during working hours. On Monday, October 24, Brewer asked the secretary to the general manager to show him a petition against the union which he understood had been circulated. It was shown to him but he refused to sign it. Later in the day Brewer was called into the office of the general manager and questioned regarding his reasons for favoring the union. During the course of this conversation Brewer was reminded that he had received seven raises since being employed in August 1959 but was cautioned not to discuss his raises with other employees. On the same day but after office hours, Brewer, while conversing with the secretary to the general manager and two other employees, stated to them that he had been in the office of the general manager and had been reminded of his seven raises during the past year. This conversation was reported to the general manager the next morning by his secretary. Brewer was called that afternoon to the office of the general manager and discharged in the presence of the office manager and with the secretary taking down the conversation in shorthand. His discharge was also effective immediately. In fact, both of the discharges here involved were in the midst of a pay period.

The order of the Board followed. In addition to finding the violations, Respondent was required to cease and desist from the unfair labor practices found, and from in any manner infringing upon the rights of its employees under the Act. The two discharged employees were to be reinstated with back pay.

According to Respondent the Board erred in holding that Brewer and Lindsey were discharged for union activity. It is contended that the holding is contrary to and unsupported by the substantial evidence on the record considered as a whole, and that both were discharged for cause. This assignment of error is couched in the background of a strenuous assertion that the trial examiner was not an impartial factfinder but a zealous prosecutor, prejudiced and biased against Respondent. Respondent also complains of that part of the order instructing it to cease and desist telling employees that they were putting their jobs in jeopardy by engaging in union activity.

We will consider first the charge against the trial examiner. This court in the leading case of N. L. R. B. v. Phelps, 5 Cir., 1943, 136 F.2d 562, speaking through Judge Hutcheson, carefully considered the necessity for impartiality on the part of a trial examiner. The principle was said to be that a respondent in a hearing before a trial examiner under the National Labor Relations Act is entitled to a fair trial by an impartial

non-partisan trier of the facts. This is, it was said:

> " * * * the essence of the adjudicatory process as well when the judging is done in an administrative proceeding by an administrative functionary as when it is done in a court by a judge. Indeed, if there is any difference, the rigidity of the requirement that the trier be impartial and unconcerned in the result applies more strictly to an administrative adjudication where many of the safeguards which have been thrown around court proceedings have, in the interest of expedition and a supposed administrative efficiency been relaxed. Nor will the fact that an examination of the record shows that there was evidence which would support the judgment, at all save a trial from the charge of unfairness, for when the fault of bias and prejudice in a judge first rears its ugly head, its effect remains throughout the whole proceeding. Once partiality appears, and particularly when, though challenged, it is unrelieved against, it taints and vitiates all of the proceedings, and no judgment based upon them may stand."

And in Sardis Luggage Company v. National Labor Relations Board, 5 Cir.,

1956, 234 F.2d 190, we noted that the Act requires that the rules of evidence be followed in Board hearings only "so far as practicable." 29 U.S.C.A. § 160 (b). Departure from the rules of evidence without more is no proof of bias on the part of the hearing officer.[3]

A careful study of the original record has demonstrated conclusively that Respondent was not deprived of its fundamental right to a fair trial in a fair tribunal. Counsel for Respondent was vigorous in his conduct of the defense and on occasion clashed with the examiner, even to an extent that would perhaps not have been tolerated in a court. The examiner conducted himself throughout the hearing with proverbial patience and we think that his conduct, including that in connection with the rulings specifically asserted, comported with the high standards that a litigant has a right to expect under the Labor Act and under the Administrative Procedure Act. 29 U.S.C.A. § 160, 5 U.S.C.A. § 1006. The examiner neither prosecuted nor assisted the general counsel in the prosecution, nor did he, as sometimes happens in administrative and judicial hearings, take over the trial from counsel. We think it sufficient to say that it did not:

> " * * * appear * * * that the proceedings were characterized

---

3. See also N. L. R. B. v. National Paper Company, 5 Cir., 1954, 216 F.2d 859 and Annotation, 93 L.Ed. 1607. On the problem of bias being found to exist in view of the creditability findings all being in favor of the general counsel, with the result that the findings are not accorded their usual weight, see National Labor Relations Board v. Miami Coca Cola Bottling Company, 5 Cir., 1955, 222 F.2d 341. The rule in this regard was set out in National Labor Relations Board v. Robbins Tire and Rubber Company, 5 Cir., 1947, 161 F.2d 798, and followed in N. L. R. B. v. Pittsburgh Steamship Company, 1949, 337 U.S. 656, 69 S.Ct. 1283, 93 L. Ed. 1602, where the Supreme Court said: "The gist of the matter has been put well by the Court of Appeals for the Fifth Circuit, speaking through Judge Hutcheson, in granting enforcement of NLRB order: 'The fact alone * * *

of which Respondent makes so much, that Examiner and Board uniformly credited the Board's witnesses and as uniformly discredited those of the Respondent, though the Board's witnesses were few and the Respondent's witnesses were many, would not furnish a basis for a finding by us that such a bias or partiality existed and therefore the hearings were unfair. Unless the credited evidence * * * carries its own death wound, that is, is incredible and therefore, cannot in law be credited, and the discredited evidence * * * carries its own irrefutable truth, that is, is of such nature that it cannot in law be discredited, we cannot determine that to credit the one and discredit the other is an evidence of bias.' "

And see N. L. R. B. v. The Newton Company, 5 Cir., 1956, 236 F.2d 438, 444.

by fell expedition or determined purpose to reach a predetermined end, or were attended with suppressive and exclusionary rulings and actions, designed to prevent and preventing a fair hearing." Continental Box Company v. N. L. R. B., 5 Cir., 1940, 113 F.2d 93.

■ Substantial evidence on the record considered as a whole supported the finding that Respondent interfered with, restrained and coerced its employees in violation of § 8(a) (1) of the Act. The facts heretofore set out make this clear, and the examiner was authorized to reach this conclusion by crediting the witness who gave the underlying testimony. This conduct falls within the teachings of N. L. R. B. v. Dan River Mills, 5 Cir., 1960, 274 F.2d 381; N. L. R. B. v. Hudson Pulp and Paper Corporation, 5 Cir., 1960, 273 F.2d 660; and N. L. R. B. v. Nabors, 5 Cir., 1952, 196 F.2d 272, cert. den., 344 U.S. 865, 73 S.Ct. 106, 97 L.Ed. 671.

■ The finding that employees Lindsey and Brewer were discharged because of their union activity thereby resulting in a violation of § 8(a) (3) and (1) of the Act by Respondent is also amply supported. The resolution of conflicting testimony concerning the discharge of these employees, and the drawing of inferences from facts established on the hearing falls within the province of the Board, and we are not to pass on the credibility of the witnesses or reweigh the evidence. Our function is to take the record as a whole and enforce if we find substantial evidence to support the findings of the Board. N. L. R. B. v. Ferguson, 5 Cir., 1958, 257 F.2d 88; N. L. R. B. v. Fox Manufacturing Company, 5 Cir., 1956, 238 F.2d 211; Universal Camera v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; and N. L. R. B. v. Walton Manufacturing Co., 1962, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed. 2d 829. And it was proper to ascribe the knowledge of the office manager of the union activity of Lindsey to the general manager on the facts adduced. N.

L. R. B. v. Abbott Worsted Mills, 1 Cir., 1942, 127 F.2d 438, 440 and Northern Virginia Steel Corporation v. N. L. R. B., 4 Cir., 1962, 300 F.2d 168, 173.

It is true, of course, that "Management can [still] discharge for good cause, or bad cause, or no cause at all. It has, as the master of its own business affairs, complete freedom with but one specific, definite qualification: it may not discharge when the real motivating purpose is to do that which Section 8(a) (3) forbids." N. L. R. B. v. McGahey, 5 Cir., 1956, 233 F.2d 406. According to the Board the employer in this instance ran four square into this qualification, and the evidence is such that the finding must stand.

■ The last assignment of error regards that portion of the order instructing the employer to cease "Telling employees that they are putting all jobs in jeopardy by engaging in union activity." This is to be distinguished from that portion of the order directing the employer to cease "Threatening employees that the operation would close and the girls would be walking the streets if the union came in." The portion of the order complained of is set out as paragraph 1(d). It is based on evidence to the effect that the general manager stated that respondent, a cooperative non-profit organization representing freight motor carrier members, might be forced out of business if the motor carriers had to pay the company the same amount to operate as it would cost them to collect their own bills. We think the Board was in error in including this requirement in the order. Its broad terms constitute a proscription of economic prophecies allowable under § 8(c) of the Act, 29 U.S.C.A. § 158(c). It has been well stated by the Third Circuit in the case of N. L. R. B. v. Morris Fishman and Sons, Inc., 3 Cir., 1960, 278 F.2d 792 that a threat to close a plant if it becomes unionized constitutes an unfair labor practice, while a prediction that a plant will be forced to close if an union contract is signed is protected by § 8(c). This particular statement of the general manager falls in the protected class. It

is an example of a prophecy by an employer of dire results for employees that may flow solely from an union's policy or practices rather than from employer action, and is privileged under the free speech section of the Act. Cf. Chicopee Manufacturing Company, 1953, 107 NLRB No. 31, 33 LRRM 1064.

The order will be enforced with the exception of paragraph 1(d) thereof.