**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BROWNWOOD MANUFACTURING COMPANY, Respondent.**

No. 22460.

United States Court of Appeals Fifth Circuit.

July 8, 1966.

Leonard M. Wagman, Atty., N L R B, Marcel Mallet-Prevost, Asst. Gen. Counsel, N L R B, Washington, D. C., for petitioner.

Emil Corenbleth, Dallas, Tex., for respondent.

Before RIVES and BELL, Circuit Judges, and FULTON, District Judge.

GRIFFIN B. BELL, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order finding that Brownwood Manufacturing Company had violated § 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1).[1] The decision and order of the Board are reported at 149 NLRB 82.

On March 30, 1962, the Amalgamated Clothing Workers Union of America petitioned for a representation election at the plant of Brownwood Manufacturing Company. The election was scheduled for May 31, 1962; but on May 25, the Union filed unfair labor practice charges against the company, and the election was postponed. The Board upheld the Union's charges, finding that the company had violated § 8(a) (1) of the Act by threats to close the plant and by repeated interrogation of employees con-

---

1. § 8(a) (1) provides that it shall be an unfair labor practice for an employer to interfere with, restrain or coerce employees in the exercise of their rights guaranteed by § 7 of the act. § 7 provides that employees shall have the right of self-organization, and to form, join or assist labor organizations, 29 U.S.C.A. § 157.

cerning their union activity. Brownwood Manufacturing Company, 1963, 140 NLRB 1027.

The election was rescheduled for October 25, 1963. Between October 18 and the day of the election, three speeches were made by company officials during working time to the employees. Upon petition filed, the Board found that the contents of the speeches violated § 8(a)(1) of the Act. The Board ordered the company to cease and desist from threatening its employees with loss of employment benefits and other reprisals. The company was also ordered to post a notice stating that the unlawful conduct would be discontinued. This petition is brought to enforce that order.

The issue is whether there is substantial evidence in the record considered as a whole to support the Board's finding that certain statements made in these pre-election speeches were violative of § 8(a)(1) of the Act; or, whether the statements were within the ambit of constitutionally protected free speech or speech protected by § 8(c)[2] of the Act, 29 U.S.C. § 158(c).

There is no factual dispute involved. The sole basis of the charge against respondent is contained in the language of the three speeches made by company officials. All three of the speeches, printed in their entirety, are before this court for our consideration. The only statement having merit from the standpoint of the Board's petition is contained in the speech of Leo Miller, Plant Manager, made to the employees on October 23. The following is the pertinent part of that speech:

"It doesn't make any difference what the pay is elsewhere. The truth is that if we give more wages and benefits, we will put ourselves out of business. How could you get a job elsewhere? The minimum pay here is $50.00 per week. If you don't earn that much, we make up the difference. A good many of you could not earn $30.00 per week elsewhere. Those of you who are experienced and skillful make way above the minimum. Of course, a person who can't make $50.00 per week is east prey for the union who tells you that they will get you something for nothing, who tells you that the union will equalize the payroll so that those who are able to earn more will make less and those who can't earn more will get something for nothing. Don't believe such foolishness. The piece rate basis is the fairest basis for all. You get what you earn. We cannot change our method of operation. Those who earn more will get more, those who can't earn more will not get more given to them. Each worker will get what she earns. No business could operate on any other basis. *Under a union contract we would be forced to discharge those who could not earn the minimum because we would have to operate on a cold business basis rather than on the easy going basis we are operating on now.*" (Emphasis added)

The Board found that the speeches contained "thinly veiled threats of reprisal through loss of benefits either as a result of moving or closing the plant or by discharge of those who did not meet the minimum production standards established on a 'cold business basis.'"

We must start from the premise that under § 8(c) an employer is a rightful contestant for the loyalty of his employees in a union election. Texas Industries, Inc. v. N. L. R. B., 5 Cir., 1964, 336 F.2d 128. The precise issue here is whether the employer has crossed the line into the realm of unprotected persuasive tactics. Did the words of the company representatives amount to threats of reprisal?

As we have stated, the Board found that the employer had made two basic

---

2. § 8(c) provides in part that:

"The expressing of any views, arguments, or opinion * * * shall not constitute or be evidence of an unfair labor practice * * *, if such expression contains no threat of reprisal or force or promise of benefit."

threats. First, that the plant would be moved or closed; second, that certain employees might face discharge. In Texas Industries, Inc. v. N. L. R. B., supra, we discussed a charge that the employer had threatened a plant closing. We stated:

"This section [8(c)] permits an employer to state his legal rights under the Act and to predict that dire economic consequences will follow from a union victory. N. L. R. B. v. Transport Clearings, Inc., 5 Cir., 1963, 311 F.2d 519; Union Carbide Corp. v. N. L. R. B., 6 Cir., 1962, 310 F.2d 844. It is only when the employer goes further and threatens to himself take economic or other reprisals against the employees that a § 8(a) (1) violation may be found. Thus, a prediction that competitive conditions will force a plant to close if a union contract is signed is protected, whereas a threat to close down in retaliation to unionization is beyond the pale. N. L. R. B. v. Morris Fishman & Sons, Inc., 3 Cir., 1960, 278 F.2d 792."

■ At no time did the company representatives state that the owners might choose to close the plant. Each reference to the possibility of a closing was phrased in terms of it being forced upon the management by competitive conditions. Thus, without more, the speech would and does fall within the protection of § 8(c) of the Act. The Board, however, contends that the cumulative effect of constantly mentioning the possibility of the plant closing throughout the three speeches made this the dominant theme and through it conveyed an aura of coercion. But, the determination of whether or not the company's methods of persuasion stayed within the sphere of protected free speech must be made by considering the entire import of the speeches. Daniel Construction Company v. N. L. R. B., 1965, 341 F.2d 805, cert. den., 1965, 382 U.S. 831, 86 S.Ct. 70, 15 L.Ed.2d 75. Although throughout their speeches the employers' representatives made frequent allusions to possible plant closings, at least equally evident were assurances that the plant would be kept open as long as it was economically feasible for the management to do so. At no time was it stated that the plant might be closed through the volition of the management in retaliation to the unionization attempts. We hold that the references to plant closing fall within the category of statements which we described in N. L. R. B. v. Transport Clearings, Inc., supra, as follows:

"This particular statement of the general manager falls in the protected class. It is an example of a prophecy by an employer of dire results for employees that may flow solely from an union's policy or practices rather than from employer action, and is privileged under the free speech section of the Act."

The situation is quite different with respect to that portion of the speech by Mr. Miller, supra. The Board held that this statement constituted a threat of loss of benefits through discharge. In effect, Mr. Miller stated that upon the arrival of unionization, working standards would be rigidified, and certain employees with whom the management had maintained a lenient policy would be either required to improve their productive capacity or be dismissed. In Edward Fields, Inc. v. N. L. R. B., 2 Cir., 1963, 325 F.2d 754, the Court stated:

" * * * there is uncontradicted testimony that Fields said union recognition might result in less employment for the men during the slack periods, more stringent work rules and loss of existing benefits. In bargaining with a committee of employees and unilaterally promising various benefits at a time when a union was organizing and seeking recognition, *and further suggesting the possible loss of existing privileges if the union was successful, the company clearly interfered with the employees in the exercise of their rights guaranteed in § 7 of the Act.*" (Emphasis added)

■ The clear import of Mr. Miller's statement was that if the union gained recognition, some of the employees would

be in danger of discharge because a more stringent company policy would be adopted. We hold that there is substantial evidence in the record to support the Board's finding that this statement could reasonably have had a coercive effect on some of the employees. It clearly confronted his listeners with the possibility that existing benefits would be lost. Under such circumstances the employees were not accorded the opportunity of making the type of free choice contemplated by the Act. Accordingly, the Board's order will be enforced.

Enforced.