435 F.2d 917
 TEXAS ALUMINUM COMPANY, Inc., Petitioner-Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner.
 No. 29434 Summary Calendar.*
 United States Court of Appeals, Fifth Circuit.
 December 16, 1970.
 
 George E. Seay, Durwood D. Crawford, Dallas, Tex., for petitioner; Seay, Gwinn & Crawford, Dallas, Tex., of counsel.
 Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Elmer P. Davis, Director, Region 16, N.L.R.B., Fort Worth, Tex., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Allison W. Brown, Jr., Eli Nash, Jr., Attys., for N.L.R.B.
 Before BELL, AINSWORTH and GODBOLD, Circuit Judges.
 AINSWORTH, Circuit Judge:
 
 
 1
 This action is before us upon the petition of Texas Aluminum Company, Inc. to review and set aside an order of the National Labor Relations Board issued on February 10, 1970. The Board has cross-petitioned for enforcement.
 
 
 2
 A hearing was held by the Trial Examiner on complaint of the General Counsel which asserted in substance that the Employer had violated Section 8(a) (1) and (3) of the National Labor Relations Act by threatening employee Glenn Holcomb with discharge because of union activity and by subsequently discharging him therefor. The Trial Examiner concluded that the Employer had violated Section 8(a) (1) of the Act by threatening Holcomb, and the Board agreed. The Employer does not challenge this finding. The Trial Examiner further concluded, however, that the actual discharge of Holcomb was not in violation of Section 8(a) (3) and (1) of the Act because the evidence that Holcomb's discharge was for union activity, although equal to, did not outweigh evidence that the discharge was for other reasons.[1] The Board reversed the Examiner's second conclusion and ordered that Holcomb be reinstated.
 
 
 3
 The only issue is whether under the holding of Universal Camera Corp. v. National Labor Rel. Bd., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), substantial evidence on the record as a whole supports the finding of the Board. We find such substantial evidence and therefore order enforcement.
 
 
 4
 In finding that the General Counsel had failed to prove Holcomb's discharge as a result of union activity, the Trial Examiner was influenced by the lack of evidence to establish an inferential link between a warning to Holcomb given by a "collateral" supervisor (Morgan) and the eventual discharge by the Plant Manager (Parks), although the Examiner found it difficult to "square the drastic action taken" by Parks with his espoused "human approach." The Board was of the opinion, however, that there was ample support for the inference that the Employer, including Plant Manager Parks, knew of Holcomb's activities and that the reasons advanced by the Employer for the discharge were patently pretextual.
 
 
 5
 The pertinent facts are as follows. Glenn Holcomb had worked approximately three and a half years for the Employer at the time of his discharge. He was hired as a laborer at $1.45 an hour, the lowest grade in that line of work. A year later he received a promotion to dolly operator, where he started at grade C, the lowest in that line. He received several merit increases and all of the general increases and at the time of his discharge was receiving the highest wage rate in the top rank as a dolly operator, ranging from $2.34 to $2.50 an hour depending on which of three shifts he worked. In July 1968 an argument occurred between Holcomb and another employee, during which Holcomb called him a liar. This resulted in Holcomb being advised by his immediate superior, Foreman Groff, that he wanted to discharge Holcomb but would first talk to Plant Manager Parks. Parks decided to give Holcomb another chance and no customary "pink slip" warning was issued. Three pink slips within a six-month period are grounds for discharge, although the rule is not absolute. There were no complaints about Holcomb's work during the period from the July incident to September 23, 1968, the date of discharge. Prior to the July conflict, Holcomb's most recent offense evoking a "pink slip" warning occurred on February 5, 1968, when he failed to punch in and out within the prescribed time limits. On Sunday, August 11, Holcomb attended a union meeting at which he actively participated. Thereafter he solicited a number of union signature cards. On the same night following the meeting a fellow employee heard a "collateral" supervisor, Morgan, say to another supervisor that he knew Holcomb was passing out union cards and that Holcomb was going to get himself fired for pushing the union. On three or more subsequent occasions the same employee heard similar remarks from Morgan. On August 14, Morgan warned Holcomb that if he did not stop passing out cards and get out of the union the company would find some way to discharge him. The same warning was repeated on August 16.[2] On September 20, Holcomb, after working the regular eight-hour shift, told Groff, his Foreman, he had to leave because of a virus and could not work the four-hour overtime shift. Foreman Groff permitted Holcomb to leave. On Saturday, September 21, Holcomb telephoned to report that he was still sick. Groff had left in the meantime on vacation, so the message was relayed to Travis, Groff's immediate superior. Neither Travis nor Groff complained or reported the matter to Plant Manager Parks. The following day, Sunday, Holcomb attended a union meeting. On Monday, September 23, 1968, when Holcomb reported for work, he was discharged by Warren Travis acting on orders from Parks. Parks ordered the discharge without any prior recommendation from either Groff or Travis.
 
 
 6
 Knowledge by the Employer of Holcomb's union activity is essential to a finding of violation of the pertinent sections of the Act. See N.L.R.B. v. Mid State Sportswear, Inc., 5 Cir., 1969, 412 F.2d 537, 539. But such knowledge may be inferred from circumstantial evidence. N.L.R.B. v. Schill Steel Products, Inc., 5 Cir., 1965, 340 F.2d 568; A. J. Krajewski Manufacturing Co. v. N.L. R.B., 1 Cir., 1969, 413 F.2d 673, 676; N.L.R.B. v. Mid State Sportswear, Inc., supra 412 F.2d at 539. Consequently, it is unnecessary that the record reflect a direct connection between Holcomb's admitted union activity, which the Board found precipitated the discharge, and the knowledge thereof by Plant Manager Parks. It is evident from the record that Morgan, who had been a Supervisor for fourteen years, was well aware of Holcomb's union activities. In that capacity, Morgan's knowledge is imputable to the Employer. See N.L.R.B. v. Transport Clearings, Inc., 5 Cir., 1962, 311 F.2d 519, 523. Moreover, the record shows that Plant Manager Parks was cognizant that union organizational campaigning was taking place. Thus we, as did the Board, find no difficulty in bridging the inferential gap between warnings to Holcomb by Morgan and Holcomb's later discharge by Parks.
 
 
 7
 In considering the applicable standard on review, it is immaterial that the Trial Examiner and the Board reached different conclusions. Under such circumstances, if the Board's findings are supported by substantial evidence on the record considered as a whole, Universal Camera requires that they be sustained. Russell-Newman Manufacturing Company v. N.L.R.B., 5 Cir., 1969, 407 F.2d 247, 249; N.L.R.B. v. Mid State Sportswear, Inc., supra 412 F.2d at 539; National Labor Relations Board v. Akin Products Co., 5 Cir., 1953, 209 F.2d 109. This does not mean, however, that the Trial Examiner's contrary findings are to be disregarded. Such findings, as part of the record, are factors "to be considered by us in assessing the substantiality of the evidence supporting the Board's decision," N.L.R.B. v. Mid State Sportswear, Inc., supra 412 F.2d at 539, but it is the findings of the Board and not those of the Trial Examiner to which the substantial evidence criteria must be applied on review. National Labor Relations Board v. Akin Products Co., supra 209 F.2d at 110. After carefully analyzing the entire record, we are of the opinion that there is substantial evidence to support the Board's finding of antiunion discrimination by the Employer resulting in Holcomb's discharge, all in violation of Section 8(a) (3) and (1) of the Act.
 
 
 8
 Accordingly, the order of the Board is enforced.
 
 
 
 Notes:
 
 
 *
 [1] Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5th Cir., 1970, 431 F. 2d 409, Part I
 
 
 [1]
 The Employer ascribes Holcomb's discharge to his unsatisfactory work performance and general unreliability. On one occasion Holcomb had reported for work with "liquor on his breath." There was also testimony of Holcomb's absenteeism around weekends and dilatory responses to calls for dolly services. However, the Trial Examiner found, and the Board agreed, that from July 1968 to September 23, 1968 (the date of the discharge), no complaints whatsoever were made by any supervisor regarding Holcomb's work performance
 
 
 [2]
 The Trial Examiner found, and the Board agreed, that Morgan's remarks on these two occasions were coercive and violative of Section 8(a) (1) of the Act