The ARMSTRONG RUBBER COMPANY, Petitioner-Cross Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.

No. 74–1646.

United States Court of Appeals, Fifth Circuit.

April 21, 1975.
As Modified June 2, 1975.

Robert H. Weaver, William A. Pyle, Jackson, Miss., for petitioner.

Charles M. Paschal, Jr., Regional Director, New Orleans, La., Elliott Moore, Deputy Associate Gen. Counsel, William H. DuRoss, III, N.L.R.B., Washington, D. C., for respondent.

Before GEWIN, BELL and CLARK, Circuit Judges.

BELL, Circuit Judge:

This case is before the court upon the petition of Armstrong Rubber Company to review and set aside an order of the National Labor Relations Board.[1] The Board has filed a cross-application for enforcement of its order. The Board found that appellant had committed an unfair labor practice when it terminated a temporary employee for his interest in union activities. We grant the petition to review in part; enforce in part, and deny enforcement in part on condition.

Armstrong operates a plant in Natchez, Mississippi where it manufactures automobile and truck tires. It employs approximately 1275 employees of whom 950 are represented by United Rubber Workers, Local 303, which has represented Armstrong's production workers since 1945. The employee in question, Thomas R. Huseman, was hired on a temporary basis in October 1972 as a tire adjuster. At that time the tire adjustment department consisted of three adjusters who were not represented by the union and three laborers who were. Soon after his arrival Huseman became interested in the Rubber Workers. On February 5, 1973 he and a fellow adjuster executed an authorization for the union to act as their bargaining representative. On February 7 Huseman was told that he would no longer be needed and he was terminated nine days later.

The administrative law judge found that Huseman was terminated because of his interest in the union in violation of § 8(a)(3) and (1) of the Act. Armstrong was ordered to reinstate Huseman "to his former job or, if that job no longer exists, to a substantially equivalent position" with back pay. The Board affirmed, adopting the recommended order of the administrative law judge.

Armstrong contends that there was not substantial evidence to support the Board's findings because the administrative law judge relied almost entirely on the testimony of Huseman while rejecting the sharply conflicting evidence which it produced. It is also urged that the order grants Huseman a permanent position whereas his previous status was as a temporary employee.

The findings of fact by the Board are conclusive if supported by substantial evidence on the record considered as a whole and will not be disturbed on appeal, 29 U.S.C.A. § 160(e); Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. Although there was evidence to support appellant's claim that Huseman was terminated because the backlog he was hired to relieve was under control, there was also evidence that his interest in the union caused his termination and we cannot say, under our scope of review, that the administrative law judge could not so find. NLRB v. Southeastern Stages, Inc., 5 Cir., 1970, 423 F.2d 878, 879. It was within the judge's province to believe Huseman and disbelieve Armstrong's witnesses, and such credibility resolutions are entitled to affirmance unless inherently unreasonable or self-contradictory. NLRB v. Standard Forge and Axle Co., 5 Cir., 1969, 420 F.2d 508, 510; NLRB v. Finesilver Mfg. Co., 5 Cir., 1968, 400 F.2d 644, 645. We are presented with nothing more than the resolution of conflicting testimony and

1. Dated February 13, 1974, and reported in 209 NLRB No. 3.

thus will not reweigh the evidence. NLRB v. Transport Clearings, Inc., 5 Cir., 1962, 311 F.2d 519, 523. The order will be enforced as to the Section 8(a)(3) and (1) violation.

The challenged remedy rests on the testimony of Huseman that he was promised more than a temporary position. His story was that Armstrong's personnel administrator told him that although the tire adjuster's position was temporary, one of the three permanent adjusters might be leaving and suggested that he might take his place. He was further told, he said, that in any event, should his temporary assignment be completed, he would be placed on another job in the plant.

It developed that the permanent adjuster, a black employee, did leave, but the position was given to a black under an affirmative action program being carried on under the auspices of the Equal Employment Opportunity office. There were some other vacancies in the plant during the interval between discharge and the hearing but there is no finding as to which job should have gone to Huseman, if any. It is undisputed that the need for a temporary tire adjuster was at or near an end.

This state of affairs must be measured against the remedy requiring reinstatement and back pay:

Having found that Respondent has engaged in unfair labor practices violative of Section 8(a)(1) and (3) of the Act, I shall recommend that it cease and desist therefrom and take certain affirmative action, including reinstating and making whole Thomas R. Huseman, in order to effectuate the policies and purposes of the Act. All backpay computations shall be in accordance with F. W. Woolworth Company, 90 NLRB 289 and Isis Plumbing & Heating Co., 138 NLRB 716. . .

Offer to Thomas R. Huseman immediate and full reinstatement to his former job or, it [sic] that job no longer exists, to a substantially equivalent position, without prejudice to his seniority or other rights and privileges, and make Thomas R. Huseman whole as set forth in "The Remedy" section above, for any loss of earnings suffered as a result of the discrimination against him.

Counsel for the Board conceded on oral argument before us that by "full reinstatement to his former job" the Board meant to confer upon Huseman, a temporary employee at the time of his discharge, only such status as he would have enjoyed absent the discrimination against him. We agree with appellant that it would be unreasonable for it to be forced to grant a discharged employee a permanent job when all that he lost was a temporary job. The remedy here, however, is "designed to restore, so far as possible, the status quo that would have obtained but for the wrongful act." NLRB v. Rutter-Rex Mfg. Co., 1969, 396 U.S. 258, 265, 90 S.Ct. 417, 24 L.Ed.2d 405, 411–412, reh. den. 397 U.S. 929, 90 S.Ct. 895, 25 L.Ed.2d 109. Moreover, there is the credited testimony of Huseman that he was at least promised a job of some kind in the plant once the temporary job ended, and in the event he was not given the permanent job as an adjuster.

Though it is settled that reinstatement is the conventional correction for discriminatory discharges,[2] the record is incomplete for the purpose of an order requiring Huseman to be restored to his former place within the company and that he be made whole. This issue together with necessary findings attendant to the reinstatement and back pay remedy was simply finessed.

We therefore decline to enforce as to the remedy required and remand for further proceedings within the discretion of the board to the end of defining on the present record, or as supplemented in the discretion of the board, the position or

2. Phelps Dodge Corp. v. NLRB, 1941, 313 U.S. 177, 187, 194, 61 S.Ct. 845, 849, 852, 85 L.Ed. 1271, 1279, 1283. See also, NLRB v. International Van Lines, 1972, 409 U.S. 48, 53, 93 S.Ct. 74, 77, 34 L.Ed.2d 201, 205.

employment status due Huseman and the extent thereof. *Cf.* Regal Knitwear Co. v. NLRB, 1945, 324 U.S. 9, 13, 65 S.Ct. 478, 480, 89 L.Ed. 661, 666. NLRB v. Anvil Products Inc., 5 Cir., 1974, 496 F.2d 94, 98.

Review granted in part, enforced in part, enforcement denied in part on condition.