NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DIXIE LIME AND STONE
COMPANY, Respondent.

No. 83-3536.

United States Court of Appeals,
Eleventh Circuit.

Aug. 6, 1984.

Elliott Moore, Deputy Assoc. Gen. Counsel, Sue Dishuck Gunter, N.L.R.B., Washington, D.C., for petitioner.

Allen M. Blake, Tampa, Fla., for respondent.

Before TJOFLAT and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

On December 19, 1980, the International Chemical Workers Union and Joint Council #1 ("the Union") filed a representation petition with the National Labor Relations Board ("the Board") seeking certification as the collective bargaining representative for production and maintenance employees of Dixie Lime and Stone Company ("the Company") at its Sumterville, Florida, facility. The Board conducted a representation election on March 5, 1981, and the Union won by a vote of 39 to 25, with five additional ballots challenged. On September 24, 1982, the Board certified the Union as the official collective bargaining representative for the Company's Sumterville employees. In November 1982, the Company notified the Union that, based on its disagreement with the Board's certification order, it would not bargain with the Union. The Union filed an unfair labor practice charge with the Board's Regional Office. The Board eventually granted the General Counsel's motion for summary judgment against the Company on the ground that

the Company's challenges to certification had already been decided in a representation proceeding prior to the September 24, 1982, certification order, and it found that the Company's refusal to bargain constituted an unfair labor practice in violation of Section 8(a)(5) and (1) of the National Labor Relations Act ("the Act"). 29 U.S.C.A. § 158(a)(5) and (1). The Board petitions for enforcement of its order. Because the Company admits it refused to bargain with the Union, the only issue in this case is whether the Board properly certified the Union as the bargaining representative for Dixie Lime's Sumterville employees.

After the election, the Company filed a number of election objections. The Company's objections 1 and 2 alleged that at two meetings with employees prior to the election Union representatives made threats of violence, which interfered with the employees' free choice. The Board directed a hearing officer to hold an evidentiary hearing on these two objections. At the hearing, a number of witnesses offered conflicting testimony about what occurred at the meetings. The first of these meetings took place on February 23, 1981. Union representative James Sams addressed a group of between fifteen and twenty employees. The Company's witnesses, both of whom were employees, testified that someone asked whether, after it became the bargaining representative, the Union would enlist "outside help" to "deal" with employees who refuse to join the Union. These witnesses claimed that after cautioning the questioner not to "put words into my mouth," Sams stated that "we have ways of dealing with people who chose [sic] not to join the Union." Sams then made a reference to a supervisor found "floating in a pit." At some point, the witnesses testified, Sams said something about "the Mafia." The Company's witnesses claimed that at another meeting on March 3 Sams addressed a group of about 20 employees and stated that if there was a strike and if he was on the picket line, no one would go to work. Sams allegedly slammed his fist on the podium for emphasis.

The Union witnesses, who included Sams, other Union officials who were present at the meetings, and some employees, presented a different version of the February 23 meeting. According to these witnesses, Sams was asked whether the employees would receive outside help in the event of a strike. Sams told the employee not to put words into his mouth, but if they did strike and needed people to help walk the picket line that the local union would provide manpower. Sams testified that an employee in the audience used the word "Mafia" in a question. Sams stressed the Union's policy against picket line violence. He described a strike during the 1970's where several violent picketers had been arrested. Sams admitted mentioning a supervisor who drowned in a rock pit during this strike, but he told the employees that the supervisor had been fishing and had fallen out of his boat and that his death had been found accidental. When an employee asked Sams what could be done to get employees to join the Union after the election, Sams replied that the question was "basically premature" but that once the plant was organized the Union had ways of talking to employees and attempting to persuade them to join the Union.

On November 17, 1981, the hearing officer issued a report and recommendations to the Board on the Company's objections to the election, recommending that the Board overrule the objections and certify the Union. Most of the hearing officer's report consists of a description of the testimony adduced at the hearing. The hearing officer followed this recitation with a paragraph that appears to form the basis of his recommendation:

> Even having found that Sams did make comments concerning violence in the event of a future strike and violence regarding those employees who chose not to join the Union, the Board has held that threats of this nature are not objectionable where they do not relate to a possible strike before the election, but were made wholly in reference to some unspecified time in the future after the Petitioner became the employees' bargaining representative, and after a strike was called.

The hearing officer cited the Board's decision in *Hickory Springs Manufacturing Co.*, 239 NLRB 641 (1978).[1] On February 12, 1982, the Board remanded the proceeding to the hearing officer with directions to issue a supplemental report in which he was required to make specific credibility resolutions, findings of fact, and recommendations on the Company's objections 1 and 2.

On May 11, 1982, the hearing officer issued a supplemental report and recommendations, which also recommended that the Company's objections be overruled and that the Union be certified as the employees' bargaining representative. The hearing officer made credibility determinations generally favorable to the Union's witnesses. He based these determinations on the demeanor and consistency of the Union witnesses, their superior experience in organization campaigns, their apparent recall of the meetings, the confusion and apparent memory lapses of the Company's witnesses, one Company witness's hearing problem, the demeanor of the Company witnesses, and the fact that some of the Company witnesses' answers were elicited by leading questions. The hearing officer concluded that the Union representatives had not made threats of violence, and he found the facts to be generally in line with the Union's version of events. On September 24, 1982, the Board issued an order in which it adopted "the Hearing Officer's findings," and certified the Union as the employees' bargaining representative. The Company challenges this order.

The Company contends that the issue presented is essentially a legal one. It insists that the hearing officer, and the Board by adoption, found that Sams made threats of violence. It relies for this contention on the hearing officer's statement in the original report and recommendation that "*[e]ven having found* that Sams did make comments concerning violence" the comments would not invalidate the election under *Hickory Springs*. The Company claims that the Board's certification order therefore rests on the legal holding of *Hickory Springs* that such threats of post-election violence do not justify setting aside an election. The Company argues that this Court's predecessor has rejected *Hickory Springs*. See, *Hickory Springs Mfg. Co. v. NLRB*, 645 F.2d 506, 580–11 (5th Cir. 1981) (denying enforcement of the Board's order in *Hickory Springs*).[2] The Company points out that since issuing its order in the present case, the Board has reversed its own position in *Hickory Springs*. See *Industrial Disposal Service*, 266 NLRB No. 22 (1983).

The Board claims that its order does not rely on *Hickory Springs*, but rests instead on its factual determination that no threat was made; consequently, *Hickory Springs* is irrelevant. It argues that the Company's claim that the Board found that Sams made threats is erroneous and that any statements in the hearing officer's first report that suggest such a finding are merely imprecise language. The Board urges that its adoption of the hearing officer's credibility determinations and factual findings be reviewed under the extremely deferential standard that we employ in passing on the Board's fact-finding. We agree with the Board's framing of the issues and conclude that the only question this enforcement proceeding presents is whether the Board's determination that Sams made no threats was supported by substantial evidence.

It is entirely clear to this Court that the Board found that Sams uttered no threats. Of course, in this enforcement proceeding we review the order of the Board, not the recommendation of the hearing officer. To

---

1. In *Hickory Springs* the Board held that threats of violence did not justify setting aside a Union representation election unless they were directed at employees' conduct during, or vote in, the impending elections. Where threats were conditioned on what the Union might do in the event of a strike after winning the election, the Board held, they were not cause to overturn the election results.

2. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, which is binding unless and until overruled or modified by this Court en banc.

the extent that the hearing officer's original report did contain a finding that Sams made threats (and we do not believe that it did), the Board obviously did not adopt that finding. In its remand order, the Board apparently considered the hearing officer not to have found any facts. The Board remarked that "[i]n his [initial] Report, the Hearing Officer summarized the testimony of [the witnesses] without making specific credibility resolutions and findings of fact." Consequently, the Company's claim that the Board, in its certification order, adopted *all* the hearing officer's factual findings, including those in his initial report and recommendation, is unavailing because the Board did not believe that the hearing officer made any factual findings in that first report. That the Board found no threats were made is clear from the face of its certification order. The Board "adopt[ed] the Hearing Officer's findings[3] and recommendations." In footnote 3 all three members of the panel made explicit their conclusion that Sams made no threats:

> Members Fanning and Zimmerman find it unnecessary to pass on the Hearing Officer's application of *Hickory Springs* ... to the facts of this case since they find it clear that no threats actually were made by Petitioner.... Based on *Hickory Springs* ... Member Jenkins would not have remanded this case for a hearing and would have overruled the Employer's objections in their entirety. Moreover, he notes that, based on the Hearing Officer's findings, no threats in fact were made by Petitioner.

In light of these statements, the Company's claim that the Board found that Sams threatened violence in the event of a strike or as a means to get employees to join the Union after the election is untenable. Indeed, it is far from clear that the hearing officer found that such threats were made even in his first report. It is likely that by "[e]ven having found [that Sams made threats]" the hearing officer meant "even

assuming Sams made threats." This interpretation is consistent with both the initial report's analysis, which makes no credibility determinations, and the supplemental report, which finds that Sams made no threats.

■ Because the Board found that Sams did not threaten violence, *Hickory Springs* is irrelevant, and the only question is whether the Board's fact-finding is sustainable. In challenging the Board's certification decision the "burden is on the employer to demonstrate that the election was not fairly conducted." *Contract Knitter, Inc. v. NLRB*, 545 F.2d 967, 971 (5th Cir. 1977). The scope of our review of the Board's order is narrow.

> The Board has broad discretion in conducting and supervising elections.... Determination of whether a union representation election was unfairly conducted and should be set aside is primarily a question for the National Labor Relations Board.... Thus, the only question for this court is whether the Board reasonably exercised its discretion in overruling the company's election objections .... The Board's determination will be sustained if it is supported by substantial evidence on the record as a whole.

*TRW-United Greenfield Div. v. NLRB*, 716 F.2d 1391, 1393 (11th Cir.1983). We reserve special deference for the Board's resolution of credibility issues. "It is not our function to reweigh the evidence or make credibility choices.... If the evidence is conflicting and the decision of the NLRB rests on credibility, then we are bound by the credibility determinations of the Board unless they are inherently unreasonable or self-contradictory." *Mead Corp. v. NLRB*, 697 F.2d 1013, 1022 (11th Cir.1983); *accord Roadway Express Inc. v. NLRB*, 700 F.2d 687, 692 (11th Cir.1983). Where this Court is faced with nothing "more than the resolution of conflicting testimony," it "will not re-weigh the evidence." *Armstrong Rubber Co. v. NLRB*, 511 F.2d 741, 742–43 (5th Cir.1975).[3]

---

**3.** In its brief, the Company claims that "[t]here is now a definite trend toward more critical scrutiny of the Board's fact and credibility determinations." Resp.Br. at 8. We perceive no

such trend in the jurisprudence of this Court, and our review of the recent cases, some of which are cited in text, indicates that we have

A review of the record indicates that testimony clearly supported the Board's finding that Sams made no threats. The Company essentially challenges the hearing officer's credibility determinations, which the Board adopted. Given our extreme deference to such findings, we hold the Company's challenge to be meritless. The evidence on which the hearing officer based his findings was the conflicting testimony of some eight witnesses. The hearing officer carefully explained the rationale behind his credibility choices. He considered the demeanor of the witnesses, their apparent ability to recall the events in question, their experience in such situations, their apparent straightforwardness, and the questions that were put to them. Moreover, the hearing officer noted that the Company's witnesses tended not to recall the context in which certain critical remarks were made. There is nothing either "inherently unreasonable or self-contradictory," *Mead Corp., supra,* in the hearing officer's reliance on these factors. Nor are the Company's asserted reasons for doubting the hearing officer's conclusions persuasive. The Company points out a number of inconsistencies among the testimony of the Union's principle witnesses, but these do not involve matters of major importance nor do they occur as frequently as more important inconsistencies in the testimony of the Company's own witnesses. The Company also claims that the hearing officer's crediting of the Union officials' testimony was erroneous because the officials were interested parties. But the same could be said about the Company's witnesses, all of whom were employees. An interest in the outcome of the proceedings does not render a witness's testimony inherently incredible. Finally, the Company complains that the hearing officer credits all of the Union's witnesses and none of the Company's. But the hearing officer had to credit one or the other side's witnesses, and his reasons for crediting the Union's witnesses appear well-supported. We therefore sustain the Board's credibility determinations and the findings of fact based on them and conclude that the Board's certification of the Union as bargaining representative was proper. Because the Union was the properly certified representative of the Company's employees, the Company's refusal to bargain with the Union constituted a violation of section 8(a)(5) and (1) of the Act.

For the foregoing reasons, the Board's order is ENFORCED.

been quite consistent in upholding the Act's policy of deference to Board fact-finding.