NATIONAL LABOR RELATIONS BOARD *v.*
J. H. RUTTER-REX MANUFACTURING
CO., INC., ET AL.

No. 32.   Argued October 22, 1969—
Decided December 15, 1969

*Arnold Ordman* argued the cause for petitioner. With him on the brief were *Solicitor General Griswold, Peter L. Strauss, Dominick L. Manoli, Norton J. Come,* and *Allison W. Brown, Jr.*

*Henry J. Read* argued the cause for respondent J. H. Rutter-Rex Manufacturing Co., Inc. With him on the briefs were *Peter H. Beer* and *Daniel Lund. Jacob Sheinkman, Ralph N. Jackson,* and *James J. Graham* filed a brief for respondent Amalgamated Clothing Workers' of America, AFL–CIO.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This case presents the question whether, when an employer has improperly failed to reinstate striking employees, and the National Labor Relations Board has after considerable delay ordered back pay for those employees, a court of appeals may, on account of the delay, modify the Board's order to provide an early cutoff date for back pay. In the circumstances of this case, we hold such a modification to be an unwarranted interference with the Board's remedial power to implement the policies of the National Labor Relations Act.

I

The employees in question chose the Amalgamated Clothing Workers of America, AFL–CIO, as their bargaining representative in January 1954. After three bargaining sessions between the union and the company, the employees went out on strike in April 1954. At that point and thereafter the company refused to bar-

gain further with the union representatives. Charges of unfair labor practices, including a refusal to bargain in good faith, were filed against the company. In April 1955, while these charges were pending, the union terminated the strike and applied for the reinstatement of many of the strikers. The company reinstated some of these employees and failed to reinstate others.

In February 1956 the Board found that the company had indeed been guilty of an unlawful refusal to bargain. It ordered the company to offer reinstatement to all strikers who applied, and to "make such applicants whole for any loss of pay suffered by reason of the . . . refusal, if any, to reinstate them." *J. H. Rutter-Rex Mfg. Co.*, 115 N. L. R. B. 388, 391 (1956). As is apparently the Board's practice in reinstatement cases involving strikers, the order did not name the individuals covered, but left disputes over the details of reinstatement and back pay to the compliance stage of the proceedings. The Court of Appeals enforced the Board's order, *NLRB v. J. H. Rutter-Rex Mfg. Co.*, 245 F. 2d 594 (C. A. 5th Cir. 1957), and entered its decree on August 19, 1957.

On August 21, 1957, the Board's regional office sent the company the standard letter describing compliance procedures, which included the following:

> "When you have fully complied with the affirmative terms of the Decree and there are no violations of its negative provisions, you will be notified that the case has been closed. Until you receive such notice you will know that the case still remains open for all purposes as awaiting compliance."

On November 7, 1957, the company wrote to the regional office stating that it had complied with "some of the provisions of the decree," and asking that the regional office bring "any instance of a failure to fully comply with the order" to the company's attention. The regional office did not answer this letter, and the com-

pany heard nothing until March 22, 1960, when a Board compliance officer notified the company that the case had been assigned to him, and requested payroll and other records necessary to determine the employment and back-pay rights of employees.

On November 16, 1961, the regional office filed a 428-page back-pay specification, alleging that the company owed more than $342,000 to some 207 strikers who had either not been reinstated within five days after applying, or who had never been reinstated, in violation of the Board and court orders. The company applied to the Court of Appeals for a permanent stay of further action in the back-pay proceedings, alleging that the Board had delayed improperly in issuing the specification. By affidavit, the Board explained that the delay was caused in part by the great complexity of the task of processing the claims of approximately 600 strikers, and in part by the extremely heavy caseload and severe limitations in staff that the New Orleans regional office experienced during the late 1950's. The Court of Appeals noted that the delay was regrettable, but denied the requested stay. *NLRB* v. *J. H. Rutter-Rex Mfg. Co.,* 305 F. 2d 242 (C. A. 5th Cir. 1962).

After a lengthy hearing, a Trial Examiner denied back pay to 35 of the 207 claimants, and reduced the amount due to just over $160,000. He determined that each employee should receive net back pay, computed according to the Board's usual formula,[1] for the period running from five days after his application for reinstatement until the company made a complying offer. Where no offer was made, the back pay was to accrue through the last quarter of 1961, the quarter in which the specification was filed. His findings and recommendations were adopted with minor modifications by the Board on June 6, 1966. *J. H. Rutter-Rex Mfg. Co.,*

---

[1] *NLRB* v. *Seven-Up Bottling Co.,* 344 U. S. 344, 345 (1953).

158 N. L. R. B. 1414 (1966). Both the Examiner and the Board considered and rejected the company's contention that the delay in issuing the specification should bar the back-pay award, either in whole or in part.

On review, the Court of Appeals found that the Board had been guilty of "inordinate" delay, in violation of § 6 (a) of the Administrative Procedure Act, 60 Stat. 240, 5 U. S. C. § 1005 (a), now 5 U. S. C. § 555 (b) (1964 ed., Supp. IV), and to the prejudice of the company, which had been "lulled into the belief that the Board was satisfied and that no further action was to be expected." *J. H. Rutter-Rex Mfg. Co.* v. *NLRB,* 399 F. 2d 356, 363 (C. A. 5th Cir. 1968). Arguing that the purpose of back-pay awards is to "deter unfair labor practices," *id.,* at 364, and believing that a substantial award of back pay would be sufficient to achieve such deterrent effect, the court modified the Board order to eliminate all back pay accruing after July 1, 1959, thus reducing the awards of some 37 strikers who had not yet received complying offers of reinstatement by that date. We granted certiorari to consider the propriety of this modi-fication,[2] 393 U. S. 1116 (1969), and we reverse the judgment below.

II

We start with the broad command of § 10 (c) of the National Labor Relations Act, as amended, 61 Stat. 147, 29 U. S. C. § 160 (c), that upon finding that an unfair labor practice has been committed, the Board shall order the violator "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies" of the Act. This Court has stated that the remedial power of the Board is "a broad

---

[2] The Court of Appeals also reversed back-pay awards as to 10 strikers in their entirety, finding the awards not supported by substantial evidence. 399 F. 2d, at 365. Certiorari was not sought as to this modification of the Board's order.

discretionary one, subject to limited judicial review."
*Fibreboard Corp.* v. *NLRB*, 379 U. S. 203, 216 (1964).

The legitimacy of back pay as a remedy for unlawful
discharge or unlawful failure to reinstate is beyond dis-
pute, *Mastro Plastics Corp.* v. *NLRB*, 350 U. S. 270, 278
(1956), and the purpose of the remedy is clear. "A
back pay order is a reparation order designed to vindi-
cate the public policy of the statute by making the
employees whole for losses suffered on account of an
unfair labor practice." *Nathanson* v. *NLRB*, 344 U. S.
25, 27 (1952). As with the Board's other remedies, the
power to order back pay "is for the Board to wield, not
for the courts." *NLRB* v. *Seven-Up Bottling Co.*, 344
U. S. 344, 346 (1953). "When the Board, 'in the exer-
cise of its informed discretion,' makes an order of
restoration by way of back pay, the order 'should stand
unless it can be shown that the order is a patent attempt
to achieve ends other than those which can fairly be
said to effectuate the policies of the Act.'" *Id.*, at
346–347.

Here the Board ordered back pay through December
1961 for employees who had not yet received complying
offers of reinstatement by that date. That order clearly
falls within the general purpose of making the employees
whole, and thus restoring the economic status quo that
would have obtained but for the company's wrongful
refusal to reinstate them. The employees encompassed
by the order earned less during the relevant quarterly
periods than they would have, had they been reinstated
in their old or substantially equivalent jobs with the
company. Thus the Court of Appeals' modification, cut-
ting off the accrual of back pay at the arbitrary date of
July 1, 1959, left the employees who had not been
reinstated by that date worse off than they would have
been but for the company's wrongful action in refusing
reinstatement. Either the company or the employees

had to bear the cost of the Board's delay. The Board placed that cost upon the company, which had wrongfully failed to reinstate the employees. In an effort to discipline the Board for its delay, the court shifted part of that cost from the wrongdoing company to the innocent employees.

The Court of Appeals justified the modification as a proper balancing of the interests of the company, which it found was prejudiced in litigating the back-pay claims by the Board's delay, and the interests of the employees in full restitution. It found statutory support for the company's position in what it took to be the Board's violation of its duty under the Administrative Procedure Act to "proceed with reasonable dispatch to conclude any matter presented to it." 5 U. S. C. § 1005 (a). Thus, the Court of Appeals reasoned, the case fell within the admonition that reviewing courts in labor cases not "rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *NLRB* v. *Brown,* 380 U. S. 278, 291 (1965).

Assuming without deciding that the delay in issuing the specification did violate the Board's duty of prompt action under the Administrative Procedure Act, it does not follow that enforcement of the full back-pay remedy was an abuse of the Board's discretion. Wronged employees are at least as much injured by the Board's delay in collecting their back pay as is the wrongdoing employer. In view of "the economic hardship caused by many years of undeservedly substandard earnings," lengthy delays "must render the back pay award a wholly inadequate and unsatisfactory remedy" to the employees for the company's refusal to reinstate them. *NLRB* v. *Mastro Plastics Corp.,* 354 F. 2d 170, 180 (C. A. 2d Cir. 1965). This Court has held before that

the Board is not required to place the consequences of its own delay, even if inordinate, upon wronged employees to the benefit of wrongdoing employers. *NLRB* v. *Electric Cleaner Co.,* 315 U. S. 685, 698 (1942); *Labor Board* v. *Katz,* 369 U. S. 736, 748 n. 16 (1962).

The Court of Appeals reasoned further that the purpose of the back-pay remedy is deterrence of unfair labor practices, and that the substantial back-pay award that it enforced would sufficiently serve that deterrent purpose. But the Board could properly conclude that back pay is not only punishment for an unfair labor practice, but is also a remedy designed to restore, so far as possible, the status quo that would have obtained but for the wrongful act. Cf. *Phelps Dodge Corp.* v. *NLRB,* 313 U. S. 177, 194 (1941).

Finally, the Court of Appeals reasoned that the company was "lulled into the belief that the Board was satisfied and that no further action was to be expected." 399 F. 2d, at 363. We need not decide whether this sort of estoppel argument would justify a court in reducing a back-pay award, for no estoppel appears in this case. The Board clearly informed the company that this case would remain open as awaiting compliance until the company received a notice that the case was closed. No such closing notice was ever given. As the Court of Appeals itself stated, the company's subsequent letter asking that violations of the order be called to its attention "could not shift or avoid its duty of compliance." *Ibid.*

We do not mean that delay in the administrative process is other than deplorable. It is deplorable if, as the Court of Appeals thought, the company was hampered in the presentation of its defenses to the back-pay specification by the delay. It is even more deplorable if, as seems clear, innocent employees had to live for some years on reduced incomes as a combined result

of the delay and the company's illegal failure to reinstate them. It may be that the company could have, through the courts, compelled earlier Board action.[3] But the Court of Appeals exceeded the narrow scope of review provided for the Board's remedial orders when it shifted the cost of the delay from the company to the employees in this case.

*Reversed.*

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE and MR. JUSTICE HARLAN concur, dissenting.

*Universal Camera Corp.* v. *NLRB,* 340 U. S. 474, requires a dismissal of the writ of certiorari.

To start with, the Board is allowed a wide field of discretion over awards of back pay against a company found to have committed an unfair labor practice. As the Court said in *Phelps Dodge Corp.* v. *NLRB,* 313 U. S. 177, 198:

> "The remedy of back pay, it must be remembered, is entrusted to the Board's discretion; it is not mechanically compelled by the Act. And in applying its authority over back pay orders, the Board has not used stereotyped formulas but has availed itself of the freedom given it by Congress to attain just results in diverse, complicated situations."

Thus the employees in this case have no automatic "right" to any award of back pay.

The *Universal Camera* case concerned the scope of judicial review of orders of the Board. Prior to that decision, many courts had conceived their function of review as an extremely narrow one; some courts looked

---

[3] Section 10 (e) (A) of the Administrative Procedure Act, 5 U. S. C. § 1009 (e) (A), now 5 U. S. C. § 706 (1) (1964 ed., Supp. IV), provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed."

only for evidence which, when viewed in isolation, substantiated the Board's findings. Congress registered its dissatisfaction with this restricted scope of review by stating the proper test in the Taft-Hartley Act as one of "substantial evidence on the record considered as a whole." 61 Stat. 148, 29 U. S. C. § 160 (e). This meant that the courts of appeals were to "assume more responsibility for the reasonableness and fairness of Labor Board decisions" than had been the practice of many of these courts in the past. 340 U. S., at 490.

The impact of this decision was to vest the courts of appeals with general supervisory responsibility over Board decisions and orders. Accordingly, the role of this Court was to be an extremely limited one. The Court in *Universal Camera* put it this way:

> "Our power to review the correctness of application of the present standard ought seldom to be called into action. Whether on the record as a whole there is substantial evidence to support agency findings is a question which Congress has placed in the keeping of the Courts of Appeals. This Court will intervene only in what ought to be the rare instance when the standard appears to have been misapprehended or grossly misapplied." *Id.*, at 490–491.

The problem in the present case is one of working out the equities of a back-pay order. Because the Board's delay in initiating compliance proceedings with respect to its original order was deemed unreasonable, the Court of Appeals saw fit to modify the terms of that order. The impact of the specific facts relating to the Board's and the company's actions in this case was taken into account by the Court of Appeals in reviewing the terms of the back-pay order. It arrived at its judgment as

an exercise of its responsibility "for assuring that the Board keeps within reasonable bounds" (*id.*, at 490) in a subject area that necessarily involves "diverse, complicated situations."

Casting the issue as one of "law" rather than as one of "fact" does not conceal the substantial departure in this case from the learning of *Universal Camera:* that the courts of appeals, and not this Court, are the watchdogs of the Board.

I would dismiss the writ as improvidently granted.