**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL UNION 396, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, and Frank Matula, Secretary-Treasurer of Local Union 396, Respondents.**

No. 73–2451.

United States Court of Appeals, Ninth Circuit.

Jan. 22, 1975.

Certiorari Denied May 19, 1975.

See 95 S.Ct. 1975.

Jay E. Shanklin, Gen. Counsel, NLRB (argued), Washington, D. C., for petitioner.

George A. Pappy (argued), of Brundage, Neyhart, Miller, Reich & Pappy, Los Angeles, Cal., for respondents.

Before CARTER and HUFSTEDLER, Circuit Judges, and SCHNACKE, District Judge *.

## OPINION

HUFSTEDLER, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order (1) requiring Local 396, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America [the "Union"] and its Secretary-Treasurer, Matula, to cease specified violations of section 8(b)(1)(A) of the National Labor Relations Act (29 U.S.C. § 158(b)(1)(A)), (2) directing the Union to proceed promptly to arbitration over the grievances of nine employees in respect of the senior-

*Honorable Robert H. Schnacke, Northern District of California, sitting by designation.

ity dates assigned to each, (3) permitting the aggrieved employees to retain counsel independent of the Union to represent them in the arbitration, and (4) requiring the Union to pay the employees' counsel fees. The Union and Matula resist enforcement contending that (1) the evidence was inadequate to sustain the Board's determination that they breached their duty of fair representation to the named employees, (2) arbitration is inappropriate because the employees' seniority grievances have no colorable merit, and (3) no substantial basis exists to support the requirement that the Union pay the employees' legal fees.

The employees involved here are "feeder drivers" for United Parcel Service [the "Company"], which delivers packages and merchandise for stores and other businesses. Feeder drivers transport packages in bulk from feeder centers to package centers, or hubs, where "package drivers" pick up the packages in smaller quantities and deliver them to their ultimate destinations. The Company divides its operations into geographical regions and districts. The region involved in this case consists of two districts: "Metro L.A.," encompassing most of Los Angeles County, and "South Calif.," embracing Southern California, other than Los Angeles County, and parts of Nevada and Arizona. The employees in both districts are represented as a single bargaining unit, but under the terms of the regional labor agreements in force during 1968–72, each local within the region administered the contract and handled grievances within its own territorial jurisdiction. Local 396's territory corresponds roughly with the Metro L.A. district.

Prior to the 1970–72 labor agreement, one seniority list was maintained for all feeder drivers in the region. No adjustments in seniority were necessary when a feeder driver was transferred from one district to another or the driver bid successfully for any run in the region. This system changed under the 1970–72 labor agreement; eight separate feeder driver seniority lists were created for different geographical areas within the region. Thus, one feeder driver seniority list was maintained for feeder drivers located in Los Angeles and another for those located in Santa Barbara.

■ The grievances of the nine feeder drivers involved here arose when, after the Company shut down its Santa Barbara facility, the drivers transferred to the Metro L.A. district and were "end-tailed" (placed at the bottom of the Metro L.A. feeder driver seniority list) instead of being "dovetailed" (given the seniority they would have enjoyed if a single, region-wide list had been maintained continuously). The transferees filed a grievance report with Local 396 alleging that they were denied their proper seniority in bidding the posted runs and asking for full seniority, based on dovetailing, and back pay. Local 396 refused to process the grievances. The Board found that Local 396 and Matula, in violation of section 8(b)(1)(A), denied the transferees the same representation accorded other employees within the Local's jurisdiction because the transferees were not members of Local 396 and because they invoked the processes of the Board. The Board's findings are fully supported by the record.

In apparent recognition of the futility of quarreling with the record, the Union and Matula do not press resistance to the cease-and-desist order. Their attack is focused on those portions of the Board's order involving arbitration. They argue that under the terms of the 1970-72 labor agreement, the aggrieved employees have no plausible seniority claim; therefore, the Union's failure to process the grievances was not a breach of its duty of fair representation, and even if the failure were a breach, requiring arbitration of frivolous claims is an unwarranted exercise of the Board's remedial powers.

The crisp disposition of the Union's contentions is that the grievances were not frivolous. The question whether these employees were entitled to be dovetailed turns on the construction and

application of some ambiguous provisions of the 1970–72 labor agreement. Section 11 of the agreement provides:

> "Feeder Drivers. It is agreed that there shall be a separate seniority list for regular feeder drivers, and those employees presently employed as regular feeder drivers shall retain their seniority in this classification. When additional openings occur in this classification, these may be filled by employees from the bargaining unit who qualify for this work, but these employees shall be placed at the bottom of the feeder driver seniority list. *In the event of a reduction in force, feeder drivers may return to their former position and retain their full seniority.* Employees desiring to qualify for feeder driver work shall indicate this desire. The names of those employees who are qualified by the Company for feeder driver work shall be placed on a list in seniority order. All vacancies in this classification shall be filled from this list. \* \* \*" (Emphasis added.)

■ Transfer of these employees was due to "a reduction in force"; therefore, they "may return to their former position and retain their full seniority." The definition of "former position," in the light of the history of the development of seniority lists for feeder drivers in the region, and the proper application of the correct standard to the differing employment histories of the drivers are far from clear. The development of multiple feeder driver seniority lists from the single list system, the negotiations preceding the 1970–72 contract, and the conduct of the Company and the Union under the contract cast serious doubt upon the Union's contention that the contract unequivocally foreclosed dovetailing of transferred employees. The Board's conclusion that the grievances were plausible is supported by the record.

■ The record also sustains the Board's determination that arbitration was an appropriate means of resolving conflicting interpretations of the labor agreement and of securing the impartial resolution of the merits of the grievances. The order to arbitrate was well within the Board's remedial discretion. (*See* Local Union No. 12, United Rubber, C., L. & P. Wkrs. v. N.L.R.B. (5th Cir. 1966), 368 F.2d 12, 24–25; *cf.* Humphrey v. Moore (1964), 375 U.S. 335, 349–351, 84 S.Ct. 363, 11 L.Ed.2d 370.)[1]

The novel issue presented here is the propriety of the Board's order requiring the Union to pay the legal fees that may be incurred in the employees' retention of independent counsel to represent them in the arbitration.[2] The Union concedes that if the order to arbitrate is upheld, the aggrieved employees have a right to independent representation. The Union's sticking point is that part of the order directing the Union to pay the bill.

■■ The Board's order that the Union pay counsel fees was within the power granted to the Board by the Act. "Congress has vested the Board, not the courts, with broad discretion to order a violator 'to take such affirmative action . . . as will effectuate the policies of [the Act]'" (N.L.R.B. v. Food Store Employees Union, Local 347, Etc. (1974), 417 U.S. 1, 8, 94 S.Ct. 2074, 2079, 40 L.Ed.2d 612). That discretion includes the grant or denial of litigation expenses and attorneys' fees. (*See* N.L.R.B. v. Local 485, Int. U. of Electrical, R. & M.

---

1. Conceivably these aggrieved employees are not confined to arbitration as a means of redress. An aggrieved employee may seek "judicial enforcement of his contractual rights [where] the union has sole power under the contract to invoke . . . the grievance procedure, and if . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievances" (Vaca v. Sipes (1967), 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842; emphasis in original).

2. In this case we are concerned only with legal fees incurred as a consequence of the arbitration proceeding. Our opinion is not addressed to legal expenses of any other kind. (*Cf.* Hall v. Cole (1973), 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702).

Wkrs. (2d Cir. 1972), 454 F.2d 17, 22 n.9; International Union of E., R. & M. W., AFL–CIO v. N.L.R.B. (1970), 138 U.S. App.D.C. 249, 426 F.2d 1243, 1253 n.15; *cf.* N.L.R.B. v. Food Store Employees Union, Local 347, Etc., *supra,* 417 U.S. 1, 94 S.Ct. 2074, 40 L.Ed.2d 612.) A court will not decline to enforce a Board order unless the order is "a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act" (Virginia Electric & Power Co. v. N.L.R.B. (1943), 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568).

One of the policies of the Act is to undo the effects of unfair labor practices by bringing about "a restoration of the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination" (Phelps Dodge Corp. v. N.L.R.B. (1941), 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271; *see also* N.L.R.B. v. Rutter-Rex Mfg. Co. (1969), 396 U.S. 258, 265, 90 S.Ct. 417, 24 L.Ed.2d 405). If the Union had not violated its duty of fair representation by its discriminatory refusal to process the grievances, the issues would have been resolved by litigation or arbitration in which the aggrieved employees would have enjoyed vigorous representation at no added cost to themselves. They cannot be restored to that position unless they are relieved of the expenses they will incur in securing the independent representation to which they are concededly entitled.[3]

■ Our inquiry, however, does not end with our conclusion that the order compelling the Union to pay counsel fees

was within the zone of discretion committed to the Board. The particular order must be scrutinized to enable us to decide whether, in the circumstances of this case, the Board abused its discretion. The aggrieved employees are entitled to the kind of representation that they would have had in processing their grievances but for the Union's unfair labor practices. Would they have been represented by a lawyer, a paraprofessional, or both? If they would not have been represented by a lawyer, is there some other circumstance that sustains the Board's order compelling the payment of *attorneys'* fees as opposed to fees for a paraprofessional? Would it be feasible and in the interest of all concerned to award payment of fees for a single attorney or single paraprofessional to represent all of the aggrieved employees if their grievances are identical? The record before us does not disclose what the facts are that bear on these questions, nor does it otherwise enable us to determine the rationale of the Board in issuing the challenged order. A limited remand to the Board will afford it "the opportunity, through additional evidence or findings, to reframe its order better to effectuate that [national labor] policy" (N.L.R.B. v. Food Store Employees Union, Local 347, Etc., *supra,* 417 U.S. at 10, 94 S.Ct. at 2080).

The Board's order will be enforced, except that portion thereof directing the Union to pay counsel fees, which is remanded to the Board for further proceedings consistent with the views herein expressed.

---

**3.** The propriety of compelling the Union to bear the expenses of independent representation for the aggrieved employees is premised, in this case, on the Union's breach of its duty of fair representation. There may be occasions where such a breach is absent, but where the interests of the union and one or more of its members clash on a particular matter, with the result that the Union's plausible interpretation of the applicable labor agreement conflicts with an equally plausible interpretation of an aggrieved member. In

such circumstances, it might be unrealistic to expect the Union to represent that member, whose interests and interpretation are adverse to the Union's own, in arbitration. We do not have to decide today whether, in those circumstances and absent an unfair labor practice, the Union could be compelled to pay for the independent representation of the aggrieved employee. (*Cf.* Humphrey v. Moore (1964), 375 U.S. 335, 349–351, 84 S.Ct. 363, 11 L.Ed.2d 370.)