NATIONAL LABOR RELATIONS
BOARD, Plaintiff,

v.

RIVERVIEW 5 P'S INC., T/A
RIVER INN, Defendant.

Civ. A. No. 90–551.

United States District Court,
D. New Jersey.

Dec. 13, 1991.

---

William Wachter, Asst. Gen., Counsel, Joseph F. Frankl, Deputy Asst. Gen. Counsel, Pablo Casasnovas, Atty., N.L.R.B., Contempt Litigation Branch, Office of Gen. Counsel, Washington, D.C., for plaintiff.

J. Jeffrey Berenato, Milstead, Gruccio & DiDomenico, Vineland, N.J., Steven Kudatzky, Duane, Morris & Heckscher, Marlton, N.J., for defendant.

## ORDER

RODRIGUEZ, District Judge.

This matter comes before the court on plaintiff National Labor Relations Board's motion for a turn-over order of defendant's bank account to pay for a backpay judgment issued against the defendant. For the following reasons, plaintiff's motion will be granted.

## I. INTRODUCTION

This case involves the awarding of backpay to discriminatees of the defendant by the National Labor Relations Board. The Third Circuit enforced in full the NLRB's award, and subsequent to the entry of judgment a Writ of Execution for said judgment was filed against the defendant. Thereafter, in August of 1991, the Writ was served on defendant's bank accounts at the Security Savings Bank in Vineland, New Jersey. The accounts executed against were Nos. 34–300038–6 and D1–835288–0.

The defendant now contends that one of the accounts levied against contains payroll for the employees of the debtor, and therefore cannot be levied against in the manner sought according to N.J.Stat.Ann. § 34:11–32 (West 1988). *See* Letter Response at 1 (Oct. 28, 1991). In addition to this dispute, Security Savings Bank, holder of the accounts, asserts a right to set-off due to the defendant's default of an underlying loan agreement.[1] The NLRB now seeks a determination as to the entitlements of the parties to the monies in the accounts.

## II. DISCUSSION

N.J.Stat.Ann. § 34:11–32 provides, in pertinent part,

If an officer shall by virtue of execution, attachment or other process remove any personal property from the possession or premises of any employer against whom the process is directed without first paying to the employees of such employer their wages owing and earned or accrued to the amount specified in section 34:11–31 of this title, such personal property shall not be sold by the officer until ten days after such removal and then not until the plaintiff or party causing the levy shall, before the sale, pay to such employees such wages upon the payment of which the process may be executed and sale made; . . . .

The defendant maintains that this section precludes execution against the accounts without permitting the defendant to first pay its employees' wages.

The NLRB does not dispute that one of the accounts consists of salary, but instead argues that the award for backpay is an award for "wages," and therefore the enumerated statutory provision does not act as a bar to execution.

Although there is a surprising dearth of State analysis of this statute, the concept of backpay is commonplace in the labor

---

1. The bank's interest to the bank account is subordinate to the employees claims for wages. In the event that there is enough money to satisfy both the NLRB award and the employee wages, the bank may be entitled to set-off. However, in light of the discussion *infra*, the banks request for set-off will be denied.

**34**

context. In attempting to define wages, various courts have concluded that backpay is part and parcel of wages. For instance, the Supreme Court, in discussing the Social Security Act, commented

[t]he purpose of the federal old age benefits of the Social Security Act is to provide funds through contributions by employer and employee for the decent support of elderly workmen who have ceased to labor. Eligibility for these benefits and their amount depends upon the total wages which the employee has received and the periods in which wages were paid. While the legislative history of the Social Security Act and its amendments or the language of the enactments themselves does not specifically deal with whether or not "back pay" under the Labor Act is to be treated as wages under the Social Security Act, we think it plain that an individual, who is an employee under the Labor Act and who receives "back pay" for a period of time during which he was wrongfully separated from his job, is entitled to have that award of back pay treated as wages under the Social Security Act definitions which define wages as "remuneration for employment" and employment as "any service ... performed ... by an employee for his employer ..."

*Social Secur. Bd. v. Nierotko*, 327 U.S. 358, 364, 66 S.Ct. 637, 640–41, 90 L.Ed. 718 (1946). The statute at issue defines wages as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses...." N.J.Stat.Ann. § 34:11-4.1(c).

That backpay should be considered wages in this case naturally follows. The discriminatees were all employees of the defendant, and the NLRB award of back pay is designed to compensate the discriminatees for monies they should have earned but for the discrimination. In awarding backpay, the NLRB recognizes the inequitable treatment suffered by the discriminatees and is correcting the harm suffered. As the Court said in a seminal case inter-

preting the National Labor Relations Act, one of the primary purposes of the Act is to "restor[e] ... the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941).

■ Treated as backpay, the question then becomes who has a priority to the money, the employees still owed, or the discriminatees. The purpose of awarding backpay to discriminatees is " 'to vindicate the public policy of [the NLRA] by making the employees whole for the losses they suffered on account of an unfair labor practice.' " *NLRB v. Rutter–Rex Mfg. Co.*, 396 U.S. 258, 263, 90 S.Ct. 417, 420, 24 L.Ed.2d 405 (1969), *quoting Nathanson v. NLRB*, 344 U.S. 25, 27, 73 S.Ct. 80, 82, 97 L.Ed. 23 (1952). If this court were to permit backpay awards to be subrogated to current wage demands, then a cash-poor employer would rarely find the resources to compensate victims of discrimination. A discriminatee, having suffered unfair treatment, has an entitlement to available funds that precedes the interest of current employees, because the discriminatees claim to the award dates back to the time of the discrimination. Had the discrimination not occurred, the discriminatees would have had earned the money some time prior to the vesting of the current employees' interest.

Therefore, the NLRB is entitled to the funds in both accounts to the extent that the money satisfies the judgment. Any remaining funds shall be distributed in accordance with New Jersey statutes.

For the foregoing reasons,

IT IS HEREBY ORDERED on this 13th day of December, 1991, that the National Labor Relations Board's motion for a turnover order is *GRANTED*.