USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-1966 PEGASUS BROADCASTING OF SAN JUAN, INC., Petitioner, v. NATIONAL LABOR RELATIONS BOARD, Respondent. ____________________ UNION DE PERIODISTAS Y ARTES GRAFICAS Y RAMAS ANEXAS, AFFILIATED TO THE NEWSPAPER GUILD, AFL-CIO, Intervenor. ____________________ ON PETITION FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD ____________________ Before Stahl, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Radames A. Torruella with whom McConnell Valdes was on brief for ____________________ _________________ petitioner. David A. Fleischer, Senior Attorney, with whom Frederick L. ____________________ _____________ Feinstein, General Counsel, Linda Sher, Associate General Counsel, _________ __________ Aileen A. Armstrong, Deputy Associate General Counsel, and National ____________________ ________ Labor Relations Board were on brief for respondent. _____________________ Ginoris Vizcarra De Lopez-Lay and Lopez-Lay Vizcarra & Porro on ______________________________ ___________________________ brief for intervenor. ____________________ April 22, 1996 ____________________ ALDRICH, Senior Circuit Judge. This is a petition ____________________ to review an order of the National Labor Relations Board brought by Pegasus Broadcasting of San Juan, Inc., d/b/a WAPA-TV (the Company), with the usual cross-application by the Board for enforcement of its order. The Company was charged with violation of sections 8(a)(5) and (1) of the National Labor Relations Act (Act), 29 U.S.C. 158(a)(5) and (1), by withholding granting wage increases. We enforce the order. The Unfair Practice ___________________ The Board found that for 18 years the Company had granted annual merit-based salary increases to its reporters based on individual evaluation, effective January of each year. In January of 1990-92 the individual raises had varied between 3% and 8%. In 1993 the Company, instead, granted a flat 1%. The Board chose to regard this as a continuance of the practice. In January of 1994, however, the Company had begun negotiations for its first collective bargaining agreement (CBA) with a newly certified union,1 and, allegedly believing that to do otherwise would violate the Act, it unilaterally discontinued all merit wage increases. It did not notify the union, nor did it indicate it was  ____________________ 1. In February of 1993 the Union de Periodistas y Artes Graficas y Ramas Anexas, Local 225, The Newspaper Guild, AFL- CIO, CLC, was certified to represent all of the Company's reporters and reporter-anchor persons employed at its television facilities in Puerto Rico. -2- merely temporarily suspending the program during bargaining. In May, 1994, during bargaining, the union filed the present charge. If this were a novel matter we might have initial sympathy with the Company's view that it was between the devil and the deep blue. It claims to have suspended its annual merit increases because awarding discretionary merit pay increases during bargaining seemed to it to fall within the prohibition on making changes with respect to mandatory bargaining matters, in violation of section 8(a)(5). See ___ NLRB v. Katz, 369 U.S. 736, 745-46 (1962). Indeed, with ____ ____ unilateral discretion, there would seem room for improper maneuvering. Id. at 746-47. However, Katz distinguished ___ ____ between merit increases that are part of an established practice of granting annual merit reviews, and those that are not, id. at 746, ruling that granting the latter is a __ violation of the Act. Id. Here, the Board found that even ___ though the amounts of the increases were discretionary, it was abandonment of the practice itself that was forbidden under the Act. Pegasus Broadcasting of San Juan, Inc., 317 _______________________________________ N.L.R.B. No. 165 (July 20, 1995). The record adequately supports the Board's finding, and we have no reason to disagree with it. Rather, we are in full accord with the recent similar case of Daily News of Los _________________ Angeles v. NLRB, 73 F.3d 406, 410 (D.C. Cir. 1996). See 29 _______ ____ ___ -3- U.S.C. 158(a)(5) and (d); Katz, 369 U.S. at 743 (any ____ unilateral change to a mandatory subject of bargaining violates the Act, despite good faith). We have previously indicated that a perception of the law such as the Company claims to have had is incorrect. See General Motors ___ _______________ Acceptance Corp. v. NLRB, 476 F.2d 850, 854 (1st Cir. 1973). _________________ ____ The Company could have avoided its alleged conundrum by freely offering January 1, 1994 merit increases at the bargaining table, rather than taking unilateral action without notice to the union. See generally Daily News, 73 ___ _________ __________ F.3d 406.2 See also Eastern Maine Medical Ctr. v. NLRB, 658 ___ ____ ___________________________ ____ F.2d 1, 8-9 (1st Cir. 1981) (withholding wage increase). The Remedy __________ Pursuant to its authority under 29 U.S.C. 160(c), the Board ordered a multi-faceted remedy directing the Company to, inter alia, (1) cease and desist from ____________ unilaterally withholding the merit wage increases and "interfering, restraining or coercing employees" in their exercise of rights guaranteed by section 7 of the National Labor Relations Act, (2) make whole each employee "for any loss of earnings suffered because of [the Company]'s having  ____________________ 2. We note that Daily News covers individual raises. 73 ___________ withheld such increase," with interest, to be computed during F.3d at 413. For raises across the board, see NLRB v. ___ ____ Blevins Popcorn Co., 659 F.2d 1173, 1189 (D.C. Cir. 1981). ___________________ "the compliance stage of this proceeding,"3 and (3) post 3. Such a bifurcated procedure is common and has met with approval. See, e.g., Holyoke Visiting Nurses Ass'n. v. NLRB, ___ ____ ______________________________ ____ 11 F.3d 302, 308 (1st Cir. 1993). See also NLRB v. Rutter- ___ ____ ____ _______ Rex Mfg. Co., 396 U.S. 258, 260 (1969); NLRB v. Deena ______________ ____ _____ Artware, 361 U.S. 398, 411 (1960). _______ -4- notice of the violation at its facilities. Pegasus _______ Broadcasting, 317 N.L.R.B. No. 165, slip op. at *1, 2-3. ____________ This is, presumptively, appropriate. The Supreme Court "has repeatedly interpreted [ 160(c)] as vesting in the Board the primary responsibility and broad discretion to devise remedies that effectuate the policies of the Act, subject only to limited judicial review," in which courts of appeal "should not substitute their judgment for that of the Board in determining how best to undo the effects of unfair labor practices." Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 898-99 _______________ ____ (1984). A Board-ordered remedy "should stand unless it can be shown that [it] is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." Virginia Elec. & Power Co. v. NLRB, __________________________ ____ 319 U.S. 533, 540 (1943). Put briefly, it is the Board -- and union -- position that, the Company having committed an unfair labor practice by unilaterally cancelling the merit wage increase program in January 1994, it is now for the Board to determine the consequences, if any. The Company objects, first, on the ground that the backpay order transgressed the Board's authority, because the raises were always discretionary as to amount and, as such, not amenable to Board determination. This thought has been sufficiently answered by the Daily News __________ -5- court. 73 F.3d at 415. More interesting is the Company's next suggestion, that the wage question is now moot. The Company and the union completed bargaining and entered into a CBA, effective September 22, 1995, that sets wages retroactive to January 1, 1994. The Company asserts that the CBA contains a so-called zipper clause providing that it comprises "the complete agreement among the parties."4 In this circumstance the Company would have us say that the Board's ordered remedy, insofar as it relates to lost wages from January 1994 plus interest, has been taken care of by the CBA, rendering the order moot or, at the very least, obviating the need for further backpay proceedings. Further proceedings would necessarily involve the Board in impermissibly interfering with the bargaining process, and altering the terms of the CBA. See NLRB v. American Ins. ___ ____ ______________ Co., 343 U.S. 395, 404 (1952); NLRB v. Insurance Agents, 361 ___ ____ ________________ U.S. 477, 487 (1960) (section 8(d) "prevent[s] the Board from controlling the settling of the terms of collective bargaining agreements"). See also H.K. Porter Co. v. NLRB, ___ ____ _______________ ____ 397 U.S. 99, 103-04 (1970). The Board's short answer is that  ____________________ 4. The clause, submitted after oral argument upon request of the panel, reads, in full: A. This agreement includes the complete agreement among the parties. This agreement cannot be modified, expanded or amended except by a written stipulation properly signed by the authorized representative of the parties. -6- the issue of whether or not the CBA moots the order is one of fact, concerning events subsequent to the Board's order, and is not presently before us. We agree with the Board. The CBA succeeded the order, and was not, and never has been, presented to it. The terms are not of record. Board counsel's courteous affirmative answer to our question about the zipper clause was accompanied by a statement that his answer could not bind the Board. Nor can we take, of our own accord, the Company's submission of the CBA. We, particularly, know that we lack the same broad right or supervisory power over the Board that we might have over a district court on new matter. Cf. NLRB ___ ____ v. Ochoa Fertilizer Corp., 368 U.S. 318, 322 (1962). The Act ______________________ unequivocally requires that new matter go through the Board: If either party shall apply to the court for leave to adduce additional evidence . . . the court may order such additional evidence to be taken before the Board, its member, agent, or agency, and to be made a part of the record. The Board may modify its findings as to the facts, or make new findings by reason of additional evidence so taken and filed, and it shall file such modified or new findings, which findings with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive, and shall file its recommendations, if any, for the modification or setting aside of its original order. 29 U.S.C 160(e). See also Ochoa, 368 U.S. at 322. ___ ____ _____ -7- Amicable adjustment by parties is of course permissible, and encouraged. See 29 C.F.R. 101.9(a) and ___ 101.16. However, "parties" include representatives of the Board, and formal settlement is contingent upon the General Counsel's approval. Id. 101.9, 101.13, 101.16, 102.52 et ___ __ seq. See NLRB v. Tennessee Packers, Inc., 390 F.2d 787, 788 ____ ___ ____ ________________________ (6th Cir. 1968) (collecting cases). Here, neither the union nor the Board agrees with the Company that the issue of compliance with the backpay order has been settled by the CBA. This court is without jurisdiction to entertain arguments not previously presented to the Board. See Woelke ___ ______ & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66 (1982) ______________________ ____ (court of appeals without jurisdiction to consider question that could have been presented in petition for reconsideration or rehearing before the Board). If there is any question the proper course is for the Company to present its proofs regarding amounts in further proceedings before the Board. 29 U.S.C. 160(e). See, e.g., Holyoke Visiting ___ ____ ________________ Nurses, 11 F.3d at 308; Fox Painting Co. v. NLRB, 16 F.3d ______ ________________ ____ 115, 116 (6th Cir. 1994). 29 C.F.R. 102.52 et seq. _______ The Company nonetheless presses that the Act bars the Board in this particular case from conducting compliance proceedings, or otherwise implementing the order, because it has now fully bargained to agreement with the union over the very amounts the Board would address. In other words, as a -8- matter of law, any compliance order would operate to alter or impermissibly supplement the terms of the CBA, in violation of 8(d) of the Act. H.K. Porter, 397 U.S. at 103-04. This ___________ is simply not so. The Board, in effect, found the bargaining had not been on the now universally-demanded level playing field. More exactly, having unfairly lacked the expected benefits of the unilaterally cancelled merit increase program, the union was required to start behind the line of scrimmage. As observed in John Zink Co., 196 N.L.R.B. 942 _____________ (1972), 1972 WL 12497 at *1, the employer is "enjoying the fruits of his unfair labor practices and gaining undue advantage at the bargaining table when he bargains about the benefits which he has already [illegally] discontinued." The Board's order means that the bargaining was not free, a matter of public, as well as private, concern. Cf. ___ Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 192-95 (1941). ___________________ ____ What were the consequences of the order? Did the Company change its behavior, admit, for example, merit increases for January 1, 1994? We, of course, make no suggestion, but it is for the Board, not the Company, to say whether the ultimate bargaining in fact accomplished the entirety of the Board's purpose. The Company's petition is denied, and the Board's ______ application for enforcement is granted. _______ -9-