ANDERSON ENTERPRISES, d/b/a
Royal Motor Sales, Petitioner

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent

Machinists Local Lodge 1305 and Machinists Automotive Trades District Lodge No. 190 of Northern California, International Association of Machinists and Aerospace Workers, AFL–CIO, et al., Intervenors

No. 99–1428.

United States Court of Appeals,
District of Columbia Circuit.

Jan. 9, 2001.

Before HENDERSON, ROGERS and TATEL, Circuit Judges.

### JUDGMENT

This case was heard on the petitions for review of an order of the National Labor Relations Board. The court has determined that the issues presented occasion no need for a published opinion. *See* D.C.Cir. Rule 36(b). For the reasons set out in the accompanying memorandum, it is

ORDERED that the petition for review is hereby denied and that the National Labor Relations Board's cross-application for enforcement of its order is hereby granted.

The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. *See* D.C.Cir. Rule 41.

## MEMORANDUM

Anderson Enterprises, d/b/a Royal Motor Sales, and German Motors Corporation (collectively, "the dealerships") petition the court for review of a decision and order by the National Labor Relations Board ("the Board") finding that they improperly declared impasses in their collective bargaining negotiations with the Machinists, the Painters, and the Teamsters unions, and that they thus unlawfully implemented compensation plans that contravened *McClatchy Newspapers, Inc. v. NLRB*, 131 F.3d 1026 (D.C.Cir.1997). The dealerships contend that the Board erred by failing to consider all of the factors under *In re Taft Broadcasting Co.*, 163 N.L.R.B. 475, 478, 1967 WL 18808 (1967), *petition for review denied sub nom. American Federation of Television & Radio Artists v. NLRB*, 395 F.2d 622 (D.C.Cir.1968), and by impermissibly expanding the reach of *McClatchy*. The Board filed a cross-application for enforcement of its decision and order against the dealerships. We affirm the Board's finding that the compensation plans granted the dealerships impermissibly broad discretion in setting wages, contrary to *McClatchy*, and accordingly, we deny the petitions without reaching the dealerships' other challenges to the Board's decision.

I.

In 1989, three auto dealerships—Royal Motor Sales ("Royal"), German Motors Corporation ("German"), and San Francisco Honda[1]—and three unions—the Machinists, the Painters, and the Teamsters—representing certain employee bargaining units at the dealerships began an unsuccessful attempt to negotiate collective bargaining agreements to replace those expiring at the end of June. *See Anderson Enters., d/b/a Royal Motor Sales*, 329 N.L.R.B. No. 71, 1999 WL 883896, at *62 (Sept. 30, 1999) ("*Anderson Enterprises*"). The dealerships ultimately declared impasses in the negotiations and implemented their final proposals. The unions filed unfair labor practice charges with the Board.[2] A key dispute among the parties throughout the bargaining process was the dealerships' proposal to introduce a flat-rate system of employee compensation, whereby employees would receive wages based on the time allotted for each job rather than an hourly, guaranteed weekly wage. *See id.* at *62–136.

The Board found that the dealerships' declarations of impasse were premature, that certain conduct away from the table constituted unfair labor practices, and that the compensation plans unilaterally implemented in the dealerships' negotiations

1. On April 7, 2000, the court severed the petition filed by San Francisco Honda and held it in abeyance pending settlement.

2. The first unfair labor charge was filed in late 1989. As summarized by the Administrative Law Judge, the "gist" of the administrative proceedings challenged the dealerships'

"declarations of impasse and dispute[d] the behavior of the negotiators during the approximately 52 bargaining sessions. In addition, certain alleged acts of [dealerships'] owners, managers, and supervisors away from the bargaining table [were] placed in issue." *Anderson Enters.*, 1999 WL 883896, at *62.

were inconsistent with *McClatchy*.[3] *See id.* at *26. The Board thereby concluded that by unlawfully implementing their final compensation plans, the dealerships violated § 8(a)(5) and (1) (29 U.S.C. § 158(a)(5) and (1)) of the National Labor Relations Act ("the Act"), *see Anderson Enters.,* 1999 WL 883896, at *26, and ordered them to rescind all or part of the implemented proposals, including the compensation plans, and to bargain with the unions in good faith on "wages, hours, and other terms and conditions of employment." *Id.* at *37–38. In addition, the Board required the dealerships to make the employees whole for lost contractual wages and for related expenses, to reimburse all union trust funds for unpaid contributions, with interest, and to post all appropriate notices. *See id.*

## II.

■ For purposes of resolving the petitions, the court need only address whether the dealerships' implementation of the compensation plans violated *McClatchy*.[4] The dealerships contend that the Board impermissibly extended *McClatchy*, effectively attempting to control the pay plans that an employer implements. They maintain that because they offered detailed compensation plans, unlike the compensation plans at issue in *McClatchy* (where the employer offered no details about its plans), unilateral implementation of the compensation plans was permissible because they were more like the merit pay plan in *Detroit Typographical Union No. 18 v. NLRB,* 216 F.3d 109 (D.C.Cir.2000) ("*Detroit News*"). We hold that the Board's application of *McClatchy* was appropriate and that its finding that the dealerships' compensation plans were inconsistent with *McClatchy* is supported by substantial evidence. *See* 29 U.S.C. § 160(e) (West 2000); *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ The principle underlying *McClatchy* is that an employer cannot disparage a union's collective bargaining role over a mandatory subject of bargaining, such as wages. In that case, because "the union could not know what criteria, if any, [the employer] was using to award individual salary increases, it could not bargain against those standards; instead, it faced a discretionary cloud." *McClatchy,* 131 F.3d at 1032. By contrast, in *Detroit News,* notwithstanding the discretionary nature of any merit pay plans, the court held that the pay plan was not standardless and the amount of employee pay increases was calculated based on a fixed wage floor. *See Detroit News,* 216 F.3d at 113.

In contrast to the detail in the pay plan in *Detroit News,* the Board found that the compensation plan implemented by the dealerships give unfettered discretion to the employers at every stage of the pay determination process, *see Anderson Enters.,* 1999 WL 883896, at *29, *32, and an examination of the plans makes this demonstrably clear. The plans permit employers to initially assign or subsequently reassign an individual employee to any classification within either the hourly or

3. *See McClatchy Newspapers,* 322 N.L.R.B. 812, 1996 WL 750250 (1996), *enforced in part and set aside in part, McClatchy Newspapers, Inc. v. NLRB,* 131 F.3d 1026 (D.C.Cir.1997); *McClatchy Newspapers, Inc.* 321 N.L.R.B. 1386, 1996 WL 506086 (1996), *enforced, McClatchy Newspapers, Inc. v. NLRB,* 131 F.3d 1026 (D.C.Cir.1997).

4. As the Board's counsel observed during oral argument, and the dealerships' counsel did not dispute, if the court affirmed the Board's impasse determination, the court would not need to reach the *McClatchy* issue. In the instant case, the reverse is no less true.

**4**

the flat rate system. Such discretion nullifies the effect that any otherwise enforceable standards of the plan may have. While employers may properly retain discretion to decide fact-specific questions as they arise, such as which of the returns qualify as "comebacks" [5] or whether a specific job estimate should be adjusted "where unanticipated or unusual difficulties arise," as the Board found, "the net effect of the wage-setting provisions in their entirety is that the [dealerships] can alter the maximum wage at will; and there is established no 'fixed status quo' from which the Unions could grieve the [dealerships'] exercise of its reserved authority to make individual wage determinations." *Id.* at *30.

Accordingly, because there is substantial evidence to support the Board's finding that the dealerships' implementation of their compensation plans was inconsistent with *McClatchy*, we deny the petitions challenging the Board's decision that the dealerships violated § 8(a)(5) and (1) of the Act and direct enforcement of its remedial order.[6]

---

5. Under the dealerships' proposals, a "comeback" is "any improperly completed work which was performed by a unit employee and which must be redone or corrected." Characterizing a job as a "comeback" has the effect of requiring the employee to perform the work without being compensated.

6. The dealerships challenge the propriety of the Board's order to restore the status quo ante and to make the union employees and various funds whole, contending that in view of the amount of time it took the Board to process the case, any monetary remedy

should be limited to the terms sought by the unions in their three-year contract proposals. This challenge, however, fails. *See NLRB v. J.H. Rutter–Rex Mfg. Co.*, 396 U.S. 258, 264–65, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969); *NLRB v. Electric Vacuum Cleaner Co.*, 315 U.S. 685, 698, 62 S.Ct. 846, 86 L.Ed. 1120 (1942); *Bufco Corp. v. NLRB*, 147 F.3d 964, 967 (D.C.Cir.1998). Further, issues relating to how the remedial order is to be implemented are for the compliance hearing. *See, e.g.,* 29 C.F.R. § 102.54 (1999)